## WALTER B. VERSTEEG, Appellant, v. WABASH RAILROAD COMPANY.

### In Banc, May 10, 1913.

1. **LIMITATIONS: Continued Use: Street Railroad: Public Street.** In order to sustain the plea of the ten-year Statute of Limitations, it must be proven by the preponderance of the evidence that the improvements which are relied upon to put the statute in motion are of such a nature and kept in such continuous state of repair that the party whose rights are adversely affected may readily observe them at any time he may come upon the property; and, by analogy, it ought to take the same character of improvements and adverse possession to establish a right by a railroad to use a public street, even if the statute were a defense. So where a railroad company began operating trains in the street in front of plaintiff's property more than ten years before he instituted his suit, but thereafter another owner of property in an adjoining block enjoined defendant from operating trains in the same street, and while that injunction was in force defendant ceased running trains over its track in the street and its track in most places became so covered and obscured by dirt that casual observers did not notice it in crossing the street, and that continued for the greater part of the ten years preceding the filing of this suit to enjoin defendant from operating a railroad in the street, the Statute of Limitations, even if it applied to such a case, is no bar to the action.

2. **STREETS: Legislative and Charter Right of Railroad to Destroy Access to Abutting Property: Compensation.** Neither the General Assembly of this State nor the municipal authorities of any city therein have ever possessed the power to authorize the use of a public street in such manner as to destroy rights of egress or ingress to property abutting thereon, without just compensation to the owner of the abutting property.

3. ———: ———: ———: **Irrevocable Grant: Not Used.** The rule of law announced in Dartmouth College v. Woodward, 17 U. S. 518, does not apply to an irrevocable grant by the General Assembly of 1851 to use and appropriate the streets of St. Louis without compensation, where the street in question was not used or attempted to be appropriated until long after the adoption of the Constitution of 1875, which prohibits the taking or damaging of private property without compensation to the owner of the property so taken or injured. ·

4. **RAILROAD IN STREET: Injunction: Laches.** The suit of the owner of property abutting on a street, to enjoin a railroad company from operating a railroad therein, is barred by laches, where defendant had been operating its trains in the street for five months before plaintiff took any steps to prohibit the same; there was a city ordinance authorizing defendant to operate its trains in the street and that gave it a *prima facie* right to do so; the property is used for manufacturing purposes and there is no particular necessity for sidewalks and if they were removed or narrowed there would be no such appropriation of the street as materially damages plaintiff's abutting property; while plaintiff with full knowledge remained silent defendant had incurred large expense in constructing a freight depot on the adjoining block which will be rendered valueless if defendant should be enjoined from running cars in the street; and it is clearly inferable from the evidence that plaintiff kept silent while defendant constructed its depot at a cost of $700,000 in the expectation that he could compel defendant to purchase his property at a price in excess of its real value. Plaintiff's remedy is a suit for damages—much like that of a land-owner who has remained silent while a railroad company, without license or condemnation, constructed a railroad over his land.

5. ———: ———: ———: **Another Successful Suit Involving Same Street.** The fact that another owner of property abutting on the same street, some years ago, before the defendant incurred considerable expense in constructing a railway track therein, was adjudged by this court entitled to enjoin the defendant from operating a railroad in said street, is not a sufficient ground for granting the same relief to plaintiff, the facts not being the same.

Versteeg v. Railroad.

6. ———: ———: ———: **Each Side Seeking Undue Advantage.** Where plaintiff waited for five months after trains were run before bringing his suit to enjoin the railroad company from operating its railroad in the street and remained silent while the company erected a freight depot at a cost of $700,000 within one block of his property, in the expectation that, if the street were closed to it, he could compel the company, in order to obtain ground on which to lay its tracks, to buy his property at a price in excess of its real value; and where the company, in a similar spirit of unfairness, encroached upon plaintiff's rights by constructing a sidetrack or "turn-out" within a few feet of one of plaintiff's buildings, and wilfully used its main track in the street in front of his property for switching purposes, in the expectation of thereby forcing him to sell his property at a price below its value, the equitable pleas of both parties appeal feebly to a court.

7. ———: ———: ———: **Construction of Another Track.** But although plaintiff's suit to enjoin the railroad company from operating trains over the existing track is barred because of laches, it will be sustained as to another track about to be constructed without authority; and defendant is enjoined from constructing a second or "turn-out" track in front of plaintiff's property, and from breaking up and making up trains in front thereof on the existing track, and from allowing its trains or cars to remain or stand in front of his property or so near thereto. as to interfere with the passage of wagons used by plaintiff and his tenants over and along the street.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

Reversed and remanded (*with directions*).

*T. Percy Carr* for appellant.

(1) This court has already held that the Wabash Railroad cannot operate its railroad in Collins street without practically monopolizing and confiscating said street to the use of said railroad company and that abutting property-owners are entitled to have such operation of said railroad in said street enjoined. Lockwood v. Railroad, 122 Mo. 86. (2) If the character of the street be such that defendant's track cannot be laid upon the street without hindering the public from us-

ing it, then no matter how important to the company that its track should be laid in that street, it cannot be done. Lockwood v. Railroad, 122 Mo. 98; Dubach v. Railroad, 89 Mo. 488; Lackland v. Railroad, 31 Mo. 180; Gaus & Sons Mfg. Co. v. Railroad, 113 Mo. 308; Knapp, Stout & Co. v. Railroad, 126 Mo. 26; Sherlock v. Railroad, 142 Mo. 172; Corby v. Railroad, 150 Mo. 457; DeGeoffroy v. Railroad, 179 Mo. 698; Lumber Co. v. Railroad, 129 Mo. 455; 2 Elliott on Roads & Streets (3 Ed.), sec. 888. (3) Nor is it competent for a city to authorize such use of a street dedicated as a street as will destroy it as a thoroughfare for the public use. Lockwood v. Railroad, 122 Mo. 98; Dubach v. Railroad, 89 Mo. 488; Lackland v. Railroad, 31 Mo. 180; Gaus & Sons v. Railroad, 113 Mo. 308; Schopp v. St. Louis, 117 Mo. 131; Knapp, Stout & Co. v. Railroad, 126 Mo. 26; Sherlock v. Railroad, 142 Mo. 182; Corby v. Railroad, 150 Mo. 457; DeGeoffroy v. Railroad, 179 Mo. 698. (4) The purchase by the defendant of the property and franchises of the North Missouri Railroad did not exempt it from the provisions of its own charter. The most that it acquired by the purchase of the North Missouri in this connection was the right to continue the use of such tracks as were laid by its predecessor during the time it had a right to exercise its franchises. This new branch or spur was constructed by itself and its right to do so must be found in the law under which it was created. Lockwood v. Railroad, 122 Mo. 96; Owen v. Railroad, 83 Mo. 459; St. Louis v. Railroad, 114 Mo. 25; R. S. 1909, sec. 5123. (5) The right of the owner of property abutting on a public street to free and unobstructed access to his property by means of such street is as much property as the street itself, and he cannot be deprived of the one without compensation any more than the other. Lackland v. Railroad, 31 Mo. 180; Gaus & Sons v. Railroad, 113 Mo. 315; Schopp v. St. Louis, 117 Mo. 131; Heinrich v. St. Louis, 125 Mo. 424;

Knapp, Stout & Co. v. Railroad, 126 Mo. 26; Corby v. Railroad, 150 Mo. 457; DeGeofroy v. Railroad, 179 Mo. 698.

*Wells H. Blodgett* and *J. L. Minnis* for respondent.

The facts in the record distinguish the case at bar from Lockwood v. Railroad, 122 Mo. 92. (1) The evidence does not support the allegation in plaintiff's petition, viz.: that defendant had not at the time the petition was filed "commenced operating locomotives, cars and trains" on the branch railroad in front of plaintiff's property. The proof showed that plaintiff's grantors acquiesced in the construction of the branch railroad and in the maintenance and operation thereof for more than eleven years, and that plaintiff stood by and acquiesced in the maintenance and operation thereof from Nov. 13, 1903, to Oct. 7, 1904, when his petition was filed, during which time defendant expended large sums of money on said railroad and depot and terminals connected therewith. Plaintiff and his grantors were thereby guilty of laches, and are now estopped and precluded from asserting the right to the injunctive relief prayed for. 1 High on Injunctions (3 Ed.), secs. 7, 618, 630, 636, 643, 756; 2 Waterman's Eden on Injunctions (3 Ed.), p. 274; 2 Lewis on Eminent Domain, sec. 634, p. 1360; Planet v. Railroad, 115 Mo. 613; Dodds v. Railroad, 108 Mo. 581; Provolt v. Railroad, 57 Mo. 256; Stammer v. Roberts, 90 Mo. 683; Sherlock v. Railroad, 142 Mo. 186; Roberts v. Railroad, 158 U. S. 10; Railroad v. Murray, 87 Fed. 648; Kakeldy v. Railroad, 80 Pac. 205; Railroad v. Strauss, 38 Md. 237; Wood v. Sutcliff, 2 Sim. N. Rep. 163; Burkham v. Railroad, 122 Ind. 344; Porter v. Railroad, 125 Ind. 476; Orne v. Friedenberg, 143 Pa. St. 567; Good v. Fire Brick Co., 224 Pa. St. 496; Wolford

v. Fisher, 84 Pac. 850; Duffy v. Mayer, 79 Atl. 603. (2) The evidence does not support the allegation in plaintiff's petition, viz.: "That by construction, maintenance and operation" of the branch railroad in front of plaintiff's property said property "will be greatly depreciated and damaged in its selling and rental value, and that such damage will differ in degree and kind from those that will accrue to other members of the community and to the public." The failure of proof with respect to this allegation is fatal to plaintiff's case. Elliott on Roads and Streets, p. 519; Rude v. St. Louis, 93 Mo. 408; Fairchild v. St. Louis, 97 Mo. 85; Nagle v. Railroad, 167 Mo. 89; Kucket v. Railroad, 163 Mo. 260; Knapp, Stout & Co. v. St. Louis, 153 Mo. 560; Grover v. Cornet, 135 Mo. 21; Coonan v. St. Louis, 97 Mo. 92; Osborn v. Railroad, 37 Fed. 830. The obstruction of the street, necessarily occasioned by the work of constructing defendant's depot and tracks was not such damage to the plaintiff as will entitle him to an injunction. Nagle v. Railroad, 167 Mo. 98. (3) Whatever right of action accrued on account of the construction and operation of the branch railroad in the street in front of the property described in the petition accrued to McLean and the Johnson Land Co., the owners of said property in June, 1891, when the branch railroad was constructed. 2 Lewis on Eminent Domain, sec. 625, p. 1337, and sec. 635, p. 1416; Robert v. Railroad, 158 U. S. 1; Powers v. Railroad, 158 Mo. 87; Boyce v. Railroad, 168 Mo. 583; Van Hozier v. Railroad, 70 Mo. 145; Buentin v. Railroad, 50 Mo. App. 414; Autenreith v. Railroad, 36 Mo. App. 254. Such right of action is now barred by the Statute of Limitations. DeGoofroy v. Railroad, 179 Mo. 698; Powers v. Railroad, 158 Mo. 87; Frankle v. Jackson, 30 Fed. 398; Scarritt v. Railroad, 148 Mo. 676; 2 Herman on Estoppel, sec. 948. (4) Defendant owned at the institution of the suit a right of way in the

street in front of plaintiff's property, and if the injunction be granted defendant will be deprived of its property without due process of law. The State, by the charter of the North Missouri Railroad, granted to that company the right to build branch railroads along narrow streets like Collins street. Railroad v. St. Louis, 66 Mo. 228. The judgment in the case of State ex rel. v. St. L., K. C. & N. Railroad, is conclusive evidence between plaintiff and defendant that said company acquired said right formerly enjoyed by the North Missouri Railroad. 2 Black on Judgments (2 Ed.), secs. 534a, 549, 607. The charter of the North Missouri Railroad is a contract within the meaning of the clause of the Constitution of the United States, which provides that no State shall impair the obligations of contracts, and the right claimed is property within the meaning of the guaranty that property shall not be taken without due process of law. The Legislature, therefore, had no power to impair such contract or take such property. Dartmouth College v. Woodward, 4 Wheat. 627; Bank v. Sharp, 6 How. 319; Birmingham Bridge, 2 Wall. 73; Pennsylvania College Cases, 13 Wall. 190; Davis v. Gray, 16 Wall. 203; Stone v. Mississippi, 101 U. S. 816; Railroad v. Texas, 170 U. S. 243. The North Missouri Railroad had power to mortgage and convey said right as other property. Williamette County v. Bank, 199 U. S. 191. This court is bound by the interpretations placed upon the above clauses of the Constitution by the Supreme Court of the United States, notwithstanding the contrary decision in the Lockwood case. U. S. Constitution, Art. 6; State v. Warner, 165 Mo. 639. Ordinance 15816 merely manifested the consent of the city to the location of the railroad and is valid for that purpose. Defendant acquired a right of way in front of the property described in the petition from the abutting owners by adverse user. Boyce v. Railroad, 168 Mo. 583.

BROWN, J.—Action to enjoin defendant from operating a railroad in front of plaintiff's property in the city of St. Louis. From a judgment for defendant, plaintiff appeals.

Plaintiff owns real estate abutting on both sides of Collins street, between Carr and Biddle, in St. Louis City.

Collins street runs north and south, and is only forty feet wide where plaintiff's property abuts thereon. This property is improved, and is used by plaintiff's tenants for manufacturing and storage purposes.

That part of the city where plaintiff's property is located is devoted almost exclusively to manufacturing purposes. In his petition plaintiff alleges that there is a sidewalk eight feet wide on each side of Collins street, leaving a space only twenty-four feet wide from curb to curb; "that the defendant has constructed and laid down in said roadway of Collins street between Biddle street and Carr street and in front of said property of the plaintiff, a single railway track, but has not up to the present time commenced operating locomotives, cars and trains thereon, but that it now threatens and proposes so to do unless restrained by the process of this court. That the defendant is now engaged in laying and constructing a second railway track on the west half of the roadway of Collins street in front of the property of plaintiff above described and proposes and threatens upon the completion of said second track to operate locomotives, cars and trains thereon, unless restrained as aforesaid by the process of this court." That the construction and operation of said railway tracks or either of them will exclude all vehicles and other traffic from that part of Collins street in front of plaintiff's property and greatly depreciate the value of said property for sale or rental purposes; wherefore plaintiff demands that defendant be enjoined "from constructing, maintaining and operating its said railway tracks on Col-

lins street between Carr and Biddle streets, and for all other proper relief.''

In its answer to this petition, defendant admits that it is operating a through line of railroad in front of plaintiff's property on Collins street; and as a bar to plaintiff's action, alleges that it has been operating said railroad continuously for a period of more than ten years.

Defendant further admits that at the time this suit was instituted, it was engaged in laying a second railway track, or ''turn-out,'' in front of plaintiff's property; but asserts that since the filing of said action, defendant has removed its second track or ''turn-out'' and does not intend to operate the same hereafter.

Defendant denies that the operation of its single track of through railroad will exclude vehicles and the public generally from Collins street or depreciate the value of plaintiff's property.

As a further defense, defendant contends that it is the purchaser and owner of all the charter rights and privileges granted to the North Missouri Railway Company by the special act of the General Assembly of Missouri on March 3, 1851, which charter rights being an irrevocable contract with the State, authorized said company to use and appropriate the public streets of St. Louis City without being liable to interference by the courts or any other power whatsoever.

Defendant also pleads an ordinance of the city of St. Louis enacted in September, 1890, granting to it the privilege of constructing and operating a railroad on Collins street.

As a further defense, defendant alleges that plaintiff, with full knowledge that defendant intended to use Collins street in front of plaintiff's property as a through line for running its freight and passenger trains, allowed and permitted defendant to expend

large sums of money without objection in purchasing
ground for and constructing a freight depot on the
block situated immediately north of and adjoining
plaintiff's property. That during the construction of
said depot, defendant continually operated freight
trains in front of plaintiff's property, and that by
acquiescing in and permitting defendant to incur great
expense in constructing said depot, which depot would
be a total loss to defendant if this injunction be grant-
ed, plaintiff is estopped from maintaining this action.

The evidence and admissions of the parties prove
that defendant constructed the track and began operat-
ing a railroad on Collins street in the year 1891.

Defendant's track was laid and trains operated at
that time not only in front of the property now owned
by the plaintiff, but also in front of the blocks imme-
diately north thereof. The defendant's road had been
operated only a short time in 1891 when one Lock-
wood, who owned property in the block immediately
north of plaintiff, enjoined defendant from operat-
ing trains in front of his property in said street.
[See Lockwood v. Wabash Railroad Company, 122
Mo. 86.]

From and after the final judgment of this court in
the Lockwood case, the defendant ceased running
through trains on Collins street until the early part of
1903; but there is much evidence that during the whole
of the period between 1901 and 1903 the St. Louis
Bridge and Terminal Company occasionally ran trains
on defendant's track on Collins street. This track
was also kept in some degree of repair by persons
jointly employed by the defendant and the Terminal
Company. There is a sharp conflict between the testi-
mony of the plaintiff and defendant as to the condition
of defendant's track in 1902 when plaintiff purchased
the property which he claims is injured by the opera-
tion of defendant's road.

Plaintiff testified that defendant's track was so completely covered with dirt when he purchased his property in 1902 that he did not observe the track or know of its existence, though he admits he was fairly familiar with the condition of the streets in that locality during a period of twenty years next prior to his purchase. Other witnesses for plaintiff testified that the track was covered too deeply with dirt to run cars over, and could only be seen at street crossings where wagons passed over it.

However, this feature of the evidence is not important in view of the conclusions we have reached on another issue in the case.

The allegation in plaintiff's petition that defendant had not commenced the operation of locomotives and cars in front of his property on Collins street at the time of the institution of this action, is not supported by any evidence in the case. Plaintiff himself testified that a great many cars had been operated on both the main track and "turn-out" in front of his property before he instituted this action. He gave it as his opinion that the defendant had been hauling building material in front of his property for sixty days before the present suit was instituted, but when pressed to fix the date when the operation of the road was begun in front of his property, he seemed to have no definite recollection of the date, but was positive that the switching and unloading of freight in front of his property both before and after the commencement of his suit had worked great inconvenience and loss to his tenants and some loss to him in the way of rents.

According to the testimony of Mr. Pryor, vice-president of the defendant company, who seemed more disposed to testify frankly and correctly than any other witness, the construction of defendant's freight depot on the block adjoining plaintiff's property was begun early in May, 1904. A decided preponderance of the evidence is to the effect that the construction of

the depot was begun about May 1, 1904, and that during its erection defendant daily operated and switched many cars in front of plaintiff's property in bringing in material for said depot and in hauling freight for the public.

Mr. Pryor admitted that while defendant's depot and sidetracks were in course of construction it wrongfully unloaded much freight in front of plaintiff's property, to the inconvenience and annoyance of his tenants. It is satisfactorily proven that the daily operation of trains in front of plaintiff's property and the construction of defendant's freight depot began not later than May 1, 1904, and that this action was not begun until October 7, 1904. It further appears that the construction of defendant's depot was known to plaintiff at the time work was begun thereon.

It was also apparent to plaintiff while the depot was in course of construction that said depot would be valueless to defendant if it was not allowed to operate its trains on Collins street in front of plaintiff's property. Defendant expended about $700,000 in constructing its freight depot before plaintiff made any objection to the operation of cars in front of his property.

These facts constitute the most important part of the evidence.

In the year 1902, and about the same time that plaintiff purchased his property on Collins street, the defendant secretly purchased at a cost of $2,000,000 the two blocks lying just north of plaintiff's property. Defendant seems to have had a two-fold purpose in this purchase; first, to lift the Lockwood injunction, and, second, to procure ground for a depot and sidetrack for switching and unloading freight.

It is charged in defendant's answer that plaintiff knew of defendant's purchase for the depot and sidetrack purposes, and having failed to inform defendant of his unwillingness to permit trains to be operated

on Collins street, is barred from maintaining this action. This part of defendant's answer is not sustained by the evidence, which is all to the effect that defendant's purchases were secretly made in the names of individuals and that plaintiff received no notice of defendant's intention to erect a depot until a very short time before its construction was begun.

Plaintiff introduced an ordinance of St. Louis City which requires an eight-foot sidewalk on each side of all forty-foot streets. His testimony also shows that defendant's cars are about ten feet wide, leaving only about seven feet of space between defendant's cars when in operation, and the sidewalks. That the usual width of freight wagons is eight to nine feet, so that when defendant's trains are in operation, there is not sufficient room on Collins street for plaintiff's tenants to haul freight without driving on the sidewalks; and that even then their wagons are often pocketed between a row of telegraph poles standing along the curb of the sidewalks.

Plaintiff testified that his tenants were so annoyed and injured by the operation of trains in front of his property, that he was compelled to reduce the rent to some of them. The exact amount of rent which plaintiff has lost by reason of defendant's acts is not clear; but he states generally that the rental value of his property has been reduced about twenty-five per cent by the operation of defendant's trains. There was some evidence on the part of defendant that the value of plaintiff's property had been increased by the construction of defendant's depot.

Plaintiff testified that he purchased his real estate on Collins street "at a bargain" in the year 1902, paying for the land and improvements subsequently made thereon, about $150,000; and that he estimated the value of said property at the time of the trial in December, 1904, at $400,000.

Plaintiff admits that the operation of defendant's road in front of his property would increase its value if switches could be laid in front thereof to accommodate his tenants in loading and unloading freight; but gives it as his opinion that there is not room for laying such switches.

It, however, appears by plaintiff's own evidence that he owns a piece of property further north on Collins street not embraced in this action in front of which a switch is laid for the accommodation of his tenants. The sidewalks in front of this last named property have been abolished, thereby making the street wide enough for three railroad tracks; but plaintiff did not show how or why the sidewalks were abolished at that particular point.

The testimony of plaintiff is inconsistent on some important points. For instance, he says the city will not permit switches or sidewalks to be so laid as to allow cars to be switched and stand in front of plaintiff's buildings; yet he admits that most of the switches or sidetracks in the city are constructed in that manner. It further appears that plaintiff lost one desirable tenant because he could not or did not furnish it a switch for unloading freight in front of his property.

## OPINION.

I. The defendant's plea of the ten-year Statute of Limitations is not sustained by the evidence. It

**Limitations.** did begin operating trains in front of the property now owned by plaintiff more than ten years before the institution of this suit, but while the Lockwood injunction was in force it ceased running trains over its track on Collins street; and its track in most places became so covered and obscured by dirt that the casual observer would not have noticed it in crossing the street.

Whether or not the ten-year Statute of Limitations applies to an action of this kind, we do not de-

cide; but the rule is that where the Statute of Limitations affecting real estate or rights therein, is pleaded as a defense, it must be proven by a preponderance of the evidence that the improvements which are relied upon to put the statute in motion, are of such a nature and kept in such continuous state of repair that the party whose rights are affected can readily observe the same at any time he may come upon the property where the improvements have been made. [Himmelberger-Harrison Lumber Company v. McCabe, 220 Mo. l. c. 181 and 182.]

By analogy, it ought to take the same character of adverse possession to destroy a right to use of the street which it requires to bar a title to real estate.

II. Regarding the rights which defendant claims to have acquired under the ordinance of St. Louis permitting it to construct and operate a railroad on Collins street and the alleged charter right granted by the State to the North Missouri Railroad Company in 1851, we are of the opinion that neither the General Assembly of this State nor the municipal authorities of its cities have ( /er possessed the power to authorize the use of a public street in such manner as to destroy rights of ingress and egress to property abutting on such street without compensation to the owners of such property.

The case of Dartmouth College v. Woodward, 17 U. S. 518, is cited and relied upon by defendant to sustain its plea of an irrevocable grant to use Collins street for railroad purposes without compensation. The rule of law announced in the Dartmouth College case does not apply in this case, for the reason that if any franchise was granted by the State to construct and operate a railroad on Collins street by the General Assembly in 1851, the road was not constructed until after the taking effect of our present Constitution, which prohibits the taking or injury of private property without compensation to the owner of the

*Irrevocable Grant.*

property so taken or injured. [Lockwood v. Wabash Railroad Company, 122 Mo. l. c. 96.]

It is also manifest that the city of St. Louis possessed no power to authorize the taking or injury of private property without compensation to the owners thereof.

In the opinion of the writer, the rule of law as to irrevocable grants of power and exemption from liability, announced in the Dartmouth College case, is fundamentally unsound, and wholy inconsistent with the reserved rights of a free State ''to alter or abolish its Constitution or form of government'' when a majority of its electors so desire. [Section 2, article 13, Constitution of Missouri adopted in 1820.]

III. The defendant's plea of laches on the part of plaintiff in bringing this action, appeals to us with more force than any other defense interposed.

Plaintiff's allegation that defendant was threatening to operate trains in front of his property on Collins street at the time this suit was instituted, ''but had not begun the operation of such trains,'' is not sustained even by plaintiff's own testimony. A clear preponderance of the evidence establishes the fact that defendant had been operating its trains on Collins street during a period of at least five months before plaintiff took any steps to prohibit the same.

Laches.

The ordinance of St. Louis City authorizing defendant to operate trains on Collins street, gave a *prima facie* right to defendant to operate its through trains on that street in front of plaintiff's property until plaintiff saw fit to complain of the obstruction of said street caused by the operation of such trains.

Plaintiff's delay in bringing this action might not act as a bar to the relief sought, if defendant had not incurred large expense in constructing its freight depot while plaintiff remained silent and inactive.

Plaintiff had full knowledge that defendant was constructing a freight depot on the block just north of his property at a cost of $700,000. Plaintiff had further knowledge that said depot would be rendered valueless to defendant if it should be enjoined from running cars on Collins street in front of plaintiff's property. Possessing this knowledge, and having neglected to give defendant notice that he objected to the operation of its trains on Collins street, plaintiff is in a position very much like a land-owner who with knowledge that a railroad is being constructed across his land in good faith, fails to object to the appropriation of a right of way across his property under color of title until a large amount of money has been expended on such construction.

In cases of the character last described, the landowner is usually restricted to his right of action for damages in taking part of his land for a right of way and the resulting injury to the remainder of his property not so taken. [Provolt v. Railroad, 57 Mo. 256; Kanaga v. Railroad, 76 Mo. 207; Dodd v. Railroad, 108 Mo. 581; Roberts v. Northern Pacific Railroad Company, 158 U. S. l. c. 11; 1 High on Injunctions (4 Ed.), sec. 643.]

In the case of Planet Property and Financial Company v. Railroad, 115 Mo. 613, we held that where a party claiming to be injured by the construction of a railroad across a street below the grade thereof, failed to take steps to prevent the construction of said road until it was completed, he would not afterwards be allowed to enjoin its operation.

Plaintiff's learned counsel zealously insists that as Collins street was forty feet wide where Lockwood successfully enjoined the operation of trains in 1892, it must necessarily follow that as said street is only forty feet wide in front of the property of plaintiff em-

The Lockwood Case.

braced in this suit, the decree should have been in his favor.

Upon carefully reading the Lockwood case, we find that at the time said suit was instituted and decided, the defendant was operating a double-track in front of Lockwood's property, which left a space of only three feet and eight inches between the sidewalks in front of Lockwood's property and its trains when in operation (122 Mo. l. c. 93), instead of a space of seven feet, as in the case at bar.

However, the main point of difference between the present action and the Lockwood case is that the defendant incurred no considerable expense in constructing its track in front of Lockwood's property in 1891, and it is not charged or proven in that case that defendant had with Lockwood's knowledge, and without objection on his part, made large expenditures for depot or other purposes, which would be lost by restraining it from running its trains.

The latest case involving the right to enjoin the operation of railroad trains on the public highways, which has come before this court, is Seibel-Suessdorf Copper & Iron Manufacturing Company v. Railroad, 230 Mo. 59, wherein it was held that a railroad company would not be enjoined from laying its tracks and operating a railroad on a public street where the space between the sidewalks and the railroad company's trains when in operation was ten feet and six inches.

Because Lockwood was allowed to enjoin the operation of trains in front of his property on Collins street, it does not necessarily follow that every other person owning property abutting on said street may have the same relief.

To secure such relief, the plaintiff must prove that he will be injured, and he must proceed in a timely manner, to invoke successfully such extraordinary remedy.

That record indicates that plaintiff is not necessarily injured to the extent he pretends to be. It is a well known fact, of which we take judicial notice, that there is not so much necessity for sidewalks, particularly wide sidewalks, in streets where, as in this case, the abutting property is used for manufacturing and storage purposes as in localities devoted to residence or retail purposes.

**Sidewalks.**

The width of sidewalks is a matter regulated by city ordinance. and there is no sound reason for supposing that the plaintiff cannot secure a reduction in the width or a vacation of the sidewalks in front of his property by applying to the legislative department of St. Louis for that purpose.

The fact that he can do so is made manifest by the evidence that the sidewalks have been abolished on both sides of Collins street at a point further north on that street where plaintiff owns other property and in front of which he does not object to the operation of defendant's trains. By securing the vacation of one-half, or four feet of the sidewalks in front of his property, and the removal of the telegraph poles to the curb of the sidewalks, as thus changed or modified, plaintiff will have sufficient room to drive freight wagons in front of his property while defendant is operating its trains, and yet leave a fairly good sidewalk for footmen to reach his property.

After a careful inspection of the whole record, we think it very probable that the plaintiff kept quiet and made no objection to the running of trains in front of his property while defendant was expending $700,000 in constructing its freight depot, believing that he could afterwards by this extraordinary action, compel defendant to purchase his property at a price in excess of its real value.

**Equity: Clean Hands.**

We think that defendant in a similar spirit of unfairness, encroached upon the rights of plaintiff by

constructing a sidetrack or "turn-out" within a few feet of one of plaintiff's buildings, and willfully used its main track in front of plaintiff's property for switching purposes, probably intending thereby to annoy plaintiff and force him to sell his property to defendant below its value.

The intent we have thus ascribed to the parties, is not fully proven, but it is clearly inferable from the evidence; consequently the equitable pleas of both parties appeal to us somewhat feebly.

We find that substantial justice will be administered by denying plaintiff's prayer for an injunction restraining defendant from operating its through trains on Collins street in front of plaintiff's property; without prejudice, however, to plaintiff to institute and maintain against defendant an action for such damages as he has sustained, if any, by the operation of such trains, and by the switching of cars in front of his property.

New Tracks and Uses.

The plaintiff is entitled to an injunction restraining defendant from constructing or operating a second track or "turn-out" in front of his property and from making up and breaking up trains in front of plaintiff's property and from allowing its trains or cars to remain or stand in front of or so near plaintiff's property as to interfere with the passage of wagons used by plaintiff and his tenants or employees over and along Collins street.

Mr. High in the fourth edition of his work on Injunctions, vol. 1, sec. 630, says:

"Where a railway company has constructed its tracks over complainants' premises without authority, and is about to construct another track over the same premises, also without authority, and without having made compensation therefor to the owner, an injunction will be granted to restrain the construction of the second track. But in such case, the first track being

already completed and the cars running thereon, an injunction will not be granted to prevent the cars from running when an action of ejectment and for mesne profits will afford ample relief."

The judgment of the circuit court is reversed, and that court is directed to enter a new judgment in conformity with our views as herein expressed.

The plaintiff having been granted part of the relief prayed for in his petition, the costs of this action are taxed against defendant.

It is so ordered.

## · IN BANC.

PER CURIAM.—This case coming into Banc, the foregoing opinion of BROWN, J., filed in Division Number Two, is adopted as the opinion of the court. All concur except that *Lamm, C. J.,* and *Faris, Bond* and *Graves, JJ.,* disapprove that part of the majority opinion which criticises the Dartmouth College case; *Lamm, C. J.,* filing separate opinion.

## SEPARATE OPINION.

*Per Lamm, C. J., Concurring In Result But Not Concurring In The Criticism Of The Dartmouth College Case.*

· LAMM, C. J.—My vote is to concur in the result reached in the opinion of my learned brother BROWN— this, for reasons stated by him and for others appearing to me in this record. But I do not concur in his criticism of the Dartmouth College case.

If we have outgrown the doctrines of that great case and they are now to be judicially repudiated by this court, as applicable to matters within its jurisdiction, it should only be done in some case in which it is necessary to call them in question, and then only

250 Mo.—6

on full consideration and on reasons vouching for themselves as conclusive. It is a landmark of the law, often and often relied on by us, and it ought not to be either doubted or removed except on a new and complete survey. [Duet. XXVII: 17.]