[No. 1427.]

Ex Parte JAMES H. GARDNER, Petitioner for Writ of Habeas Corpus.

(Syllabus by Bigelow, C. J.)

1.—District Court, No Power to Transfer Case from Another County.—The district court of one county has no power to make an order that an action pending in the court of another county shall be transferred to the first named court. Such an order is void, and gives the court no jurisdiction of the action.

2.—Court, No Jurisdiction, Orders Made by, Void.—Where a court has no jurisdiction of an action, any order it may make in such action is equally without jurisdiction, and void.

3—CONTEMPT—HABEAS CORPUS.—It is not a contempt of court to fail to comply with an order which the court had no jurisdiction to make, and a party imprisoned for a contempt committed under such circumstances will be discharged upon *habeas corpus*.

ORIGINAL PROCEEDING.    Application for writ of *habeas corpus*.

The facts are stated in the opinion.

*Torreyson & Summerfield* and *J. R. Judge*, for Petitioner:

There are three essential elements in this proceeding requisite to render the conviction in this case valid:   (1) Jurisdiction over the person of the defendant.   (2) Authority of the court to render the particular judgment.   (3) Jurisdiction of the subject matter.   If either of these elements are lacking, the judgment is fatally defective. (Browne on Jurisdiction, sec. 110, p. 294; *Hahn* v. *Kelly*, 34 Cal. 391; *Kline* v. *Kline*, 57 Iowa, 386; Freeman on Judg., sec. 120, 2d ed.; Browne on Juris., sec. 10, note 1, p. 24, sec. 11, p. 25, sec. 1, pp. 3, 4, sec. 6, p. 16, note 1; *Woodworth* v. *Allen*, 4 Allen, 321.)

The record must show that petitioner had possession or control of the child. (15 Abbott's Prac., N. S. 430; 6 Cal. 318.)

In proceedings in *habeas corpus* the inquiry is:   Was the court empowered to make the order?   Did it make the order and was obedience possible?   If obedience was impossible and the contempt consisted of non-performance, not the result of defendant's acts, willfully done after notice of the order had been given or received by him, then the order itself was improvident.   (Browne, p. 312, and cases cited in note 1.)

If the court in a proceeding for contempt state the facts upon which it proceeded, a revising court or tribunal may on *habeas corpus* discharge the party, if it appear that the facts do not amount to a contempt; and in this case we claim that the facts shown and attempted to be stated do not warrant the judgment.   (Church on *Habeas Corpus*, sec. 340.)

If the record shows a want of jurisdiction the judgment is void and the prisoner will be discharged on *habeas corpus*. (*Ex parte Grace*, 12 Iowa, 208; *Ex parte Godin*, 67 Mo. 641; *Cooper* v. *People*, 13 Col. 337; *Ex parte Degeners*, 30 Tex. App. 566.)

If a court, judge or tribunal having no jurisdiction of the person or subject matter sentences a person for contempt,

such person may be released by any court having authority to issue writs of *habeas corpus*. (*Ex parte Perkins*, 29 Fed. Rep. 900; *Ex parte Fisk*, 113 U. S. 713; *Coleman* v. *Mayor*, 34 Tex. 668; *Ex parte Hollis*, 59 Cal. 405; *Cuddy, Petitioner*, 131 U. S. 280.)

Courts will inquire into the regularity of the commitment, and if necessary go behind the commitment in order to ascertain if there is sufficient grounds for the arrest, detention and imprisonment. (Church on *Habeas Corpus*, sec. 230; *Ex parte Jenkins*, 2 Wall. 521; *Walls* v. *Whitney*, 114 U. S. 546; 4 Mackey, 38; *Ex parte Willoughby*, 14 Nev. 451; *Ex parte Hollis*, 59 Cal. 405; 106 N. Y. 604; *In re Simon*, 13 N. Y. Supp. 399.)

Admitting that the court had jurisdiction to render a judgment and also jurisdiction of a person, then did the court have jurisdiction of the subject matter? We contend that it did not. Mr. Black in his dictionary, p. 1130, defines "subject" to be "the thing in controversy or the matter spoken of or written about." Mr. Kinney, at page 637, defines it to be "the matter under consideration or in dispute." Mr. Anderson, page 983, defines it to be "the cause of action, the thing or matter spoken of, written about or legislated upon—the thing or object in controversy or in dispute."

The subject matter of the order for disobeying which the petitioner was adjudged to be in contempt was the child Amyleta Frances Gardner, and the record on the return to the writ shows that she was not, at the time of the making of the order, within the jurisdiction of the court, nor had she been within the jurisdiction for ten days prior to the making of the order.

Proceedings for contempt are never retroactive so as to include acts performed before the existence or making of the order which is claimed to have been thereby violated. (Wells on Jurisdiction, sec. 192; *Dunham* v. *State*, 6 Clarke, 253; *Witter* v. *Lyon*, 34 Wis. 575.)

It is improper to remove a child from the jurisdiction of the court, but this is not contempt unless in defiance of an express order. (Stewart on Marriage & Divorce, secs. 103, 106; 76 Ill. 399, 409–17; 57 Wis. 206, 221–22.)

*William Woodburn*, for Respondent.

(No brief on file.)

By the Court, BIGELOW, C. J.:

The wife of petitioner brought an action against him for a divorce in the district court of Lyon county. The complaint also asks for the custody of the infant child of the parties.

On January 26, 1895, while the action was pending in Lyon county, the district court of Ormsby county made the following order: "*Ida L. Gardner* v. *James H. Gardner*. In this entitled cause, and by consent of William Woodburn, Esq., counsel for plaintiff, and J. D. Torreyson, Esq., of counsel for defendant, it was ordered that the cause herein be, and the same is hereby, transferred from the county of Lyon to the county of Ormsby, State of Nevada, and set for hearing February 12, 1895."

On February 12th, while the trial of the action was progressing before the court in Ormsby county, the attorney for the plaintiff, upon certain affidavits, asked an order of the court directing the defendant to deliver the custody of the child to the plaintiff during the pendency of the case, and an order was made to that effect. This order not having been complied with, on February 14th the court ordered the defendant to produce the child in court at 3 o'clock of that day. By subsequent orders the time for doing this was extended until February 23d, when, the defendant failing to produce the child, the following order was made: "Ordered that the defendant, James H. Gardner, is guilty of contempt of court, and that he be confined in the Lyon county jail, Lyon county, State of Nevada, until he produces his child in court in compliance with an order heretofore made."

Subsequently an order was issued, purporting to be made in the district court of Lyon county, but certified by the clerk of Ormsby county to be a copy of the judgment of contempt on file in his office, directing the sheriff of Ormsby county to arrest the petitioner, and deliver him to the sheriff of Lyon county, where he was to be confined until he should produce the child. Under this order he has been arrested by the sheriff of Ormsby county, and from his custody he now asks to be discharged.

As so often decided, the only question we can consider

upon this application is whether the district court of Ormsby county, which really made the order for the petitioner's arrest and confinement (although there seems to be some uncertainty in the orders as to which court the action was then pending in), had authority or jurisdiction to do so. We are of the opinion that it did not. Notwithstanding that Lyon and Ormsby counties are both in the same judicial district, the courts of those counties are still separate and distinct. The only thing they have in common is that the same judge presides over both. A judicial district is simply a political division, provided for by the constitution, but arranged by the legislature, for the purpose of economizing in the number of judges. In fact, the inclusion of any two counties in the same district may almost be said to be accidental.

The judge alone does not constitute a "court." Burrill defines the term thus: "A 'court' may be more particularly described as an organized body with defined powers, meeting at certain times and places for the hearing and decision of causes and other matters brought before it, and aided in this, its proper business, by its proper officers, *viz.*: Attorneys and counsel to present and manage the business, clerks to record and attest its acts and decisions, and ministerial officers to execute its commands and secure due order in its proceedings."

Proceedings at another time and place, or in another manner than that specified by law, though in the personal presence and under the direction of a judge, are *coram non judice*, and void. (*State* v. *Roberts*, 8 Nev. 239; *Wightman* v. *Karsner*, 20 Ala. 446; *Brumley* v. *State*, 20 Ark. 77.) It follows that the district court of Lyon county could not possibly have had any authority to sit as a court in Ormsby county, even supposing it had attempted to do so. Section 21 of the practice act (Gen. Stats., sec. 3043) provides that " the court may on motion change the place of trial." This, of course, means the court where the action is pending. It is not possible for one court to reach out and draw to itself jurisdiction of an action pending in another court, even when done with the consent of parties; for that would be to confer jurisdiction by consent, which, so far as subject matter is concerned, can never be done.

Not having jurisdiction of the action, it had no jurisdic-

Points decided.

tion to order the defendant to produce the child. (*Walton* v. *Develing*, 61 Ill. 201; *In re Ayers*, 123 U. S. 443; *Piper* v. *Pearson*, 2 Gray, 120.)

Having no jurisdiction to make the order, it was not a contempt for the petitioner to fail to comply with it. Mr. Spelling, in his work on Extraordinary Relief (sec. 1243), says: "Where a court attempts by its process of contempt to punish a party for his refusal to comply with an order which that court had no authority to make, the original order being void for want of jurisdiction, the order punishing for contempt is also void, and, if the proceeding for contempt result in imprisonment, the prisoner may be discharged by another court on *habeas corpus*." See, also, Rap. Contempt, sec. 16.

It is ordered that the petitioner be discharged.