[No. 1645.]

## EX PARTE CHARLES WONACOTT.

DISTRICT COURT—PLACE OF HOLDING TERMS—STATUTORY PROVISIONS—CON-
STITUTIONALITY.

1. Under Const. art. VI, sec. 7, declaring that the terms of the district court
shall be held at the county seats of the respective counties, provided
that, in case any county shall hereafter be divided into two or more
districts, the legislature may by law designate the place of holding
court in such districts, Stat. 1903, p. 198, c. 104, directing that the
sittings of the district court shall be held at a certain town whenever
the people of that portion of the county lying nearer or more con-
veniently situated to that town than to the county seat shall be
accommodated thereby, is void.

MANDAMUS by Chas. Wonacott against Peter Rice and
others to compel respondents, as Commissioners of Nye
County, to provide proper rooms for the District Court.
**Application denied.**

*C. F. Reynolds*, for Petitioner:

I.   If the section involved in this case can be so construed
as to sustain the act without doing violence to the language,
that construction must be adopted.   The evident object of
the framers of the constitution in adopting sections 20 and
21 of article IV was to secure general laws whenever they
could be appropriately adopted.   It follows that the legis-
lature would not be called upon to pass a law for the hold-
ing of sittings of the court of the Third Judicial District in
Tonopah, Nye county, unless the facts making it necessary
were the same as in Nye county.

*C. L. Richards*, District Attorney of Nye County, and
*Vermilyea & Bartlett*, for Respondents:

I.   Counsel for respondents respectfully submit that the
act involved in this action is unconstitutional in that it is in
conflict with section 1, article III, of the constitution, which
provides that the "power of the government of the State of
Nevada shall be divided into three separate departments, the
legislative, the executive and the judicial, and no persons
charged with the exercise of powers properly belonging to
one of these departments shall exercise any functions apper-
taining to either of the others, except in the cases herein
expressly directed or permitted; in that a section of the said

act confers upon and delegates to the district judge of the third judicial district the exercise of a power properly belonging to the legislative department; in that such section makes the district judge of said district the sole judge of the condition under which sittings of court shall be held in the town of Tonopah, Nye county.

II. Said act is in conflict with section 20 of article IV, which provides that the legislature shall not pass local or special laws regulating the practice of courts of justice, regulating county and township business, and with section 2 of said article IV, which provides that not only "in all cases enumerated in the preceding section," but that "in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the state," in this, that said act is of purely local and special application to the county of Nye and the town of Tonopah, in said county, in a case and upon a subject where a law could and should, because of its very nature and character, be made general and of uniform operation throughout the state. The contention made by counsel for petitioner, that the power to determine whether or not a general law can in any case be made applicable is exclusively in the legislature, is without merit. While the legislature has the right to decide primarily whether in a given case a general law can be made applicable, that decision may be reviewed and upheld or reversed by this court. (*Clarke* v. *Irwin*, 5 Nev. 124; *Hess* v. *Pegg*, 7 Nev. 28.)

III. Said act is in violation of section 25 of article IV of the constitution, which provides that "the legislature shall establish a system of county and township government, which shall be uniform throughout the state," in that the act proposes a system for the county of Nye not made common to the other counties of the state. (*State* v. *Gracey*, 11 Nev. 228–229.)

IV. In order to observe the uniformity required by the constitution, classification, if made, must be based upon reasonable and actual differences; the legislation must be appropriate to the classification, and embrace all within the class. (*Singleton* v. *Eureka County*, 22 Nev. 98–99; *State* v. *Boyd*, 19 Nev. 46.)

V.  Said act is in conflict with and is prohibited by the express terms of section 7 of article VI, which provides that "the terms of the district courts shall be held at the county seats of their respective counties," in that the act provides another place than the county seat for the holding of sittings of court.  For the reasons which prompted the adoption of this clause as it now stands, the court is respectfully referred to Nevada Constitutional Debates and Proceedings, pp. 674–675 and 721, *et seq*.

VI.  Section 7 of article VI also provides that "in case any county shall be hereafter divided into two or more districts, the legislature may, by law, designate the place of holding courts in such districts." But it is submitted that this act now under consideration does not come within the said provisions, said act being, as its title and several sections indicate, merely a provision for holding sittings of court at the town of Tonopah under certain conditions. "In construing constitutions the first and last duty is to ascertain the intention of the framers of the instrument, and of the people who ratified it." (*State* v. *Arrington*, 18 Nev. 414.)

VII.  It is too plain for argument that the creation of more than one county seat in any one county for a special purpose is repugnant to our entire system of state and county government as contemplated by the framers of the constitution and never once challenged in all the laws passed since its adoption until suggested by counsel for petitioner as being the legislative intent at this time.  Such an act would violate and render little short of chaotic a system for the uniformity of which our fundamental law has in express terms so carefully and positively provided.

By the Court, Talbot, J.:

Petitioner applies for a writ of mandate requiring respondents, as commissioners of Nye county, to carry out the provisions of an act passed by our last legislature (Stats. 1903, p. 198, c. 104) which directs that sittings of the district court shall be held at the town of Tonopah whenever the people of that portion of the county lying nearer or more conveniently situated to that town than to Belmont, the county

seat, shall be accommodated thereby, or when such sittings, in the opinion of the district judge, shall be more economical to the litigants.   We quote:

"SEC. 4.   The sittings of the district court, or session thereof, held in the town of Tonopah, shall be the same in validity and effect as if held in the town of Belmont, and shall be so held for the accommodation of the people, for the accommodation and convenience of litigants, witnesses and jurors, and for the purpose of giving greater publicity to the proceedings of such court than if held in the town of Belmont.

"SEC. 5.   The county commissioners of Nye county shall provide the proper rooms for the use of the court and the clerk."

Respondents have failed to provide the rooms designated. Petitioner asserts, and it is conceded, that the town of Belmont, the county seat, is distant from the town of Tonopah 50 miles, and 85 miles from Austin, in Lander county, the nearest and most convenient railroad station; that there is no telegraphic or telephone service between Belmont and the world at large, and especially with Tonopah; that the only communication between the latter place and Belmont is by United States mail, which is forwarded by the way of Sodaville, and from there through several counties by rail to Austin, and thence by stage to Belmont, requiring several days in transit; that the population of Nye county is about 5,000 inhabitants, and, of these, that about 4,000 reside in or nearer to Tonopah than to Belmont; that all sittings of the district court are held at Belmont; and that if a part of them are held at Tonopah, as provided for in the act mentioned, a great saving will be made to the county in the payment of fees and mileage to jurors, and a large number of litigants and persons having business with the district court will be accommodated.

The question involved is controlled by article VI, sec. 7, of our state constitution, which requires that "the terms of the Supreme Court shall be held at the seat of government, and the terms of the district court shall be held at the county seats of their respective counties; *provided*, that in case any county shall hereafter be divided into two or more districts,

the legislature may, by law, designate the place of holding court in such districts." As shown by reference to the constitutional debates, the opponents of this section failed in a strong effort to prevent its insertion, and after objection, discussion, and due consideration it was inserted by the framers, and adopted by the people in their sovereign capacity, and became the supreme law of the state,. binding our legislatures and courts until abrogated or modified by the same august power by which it had been created. This statute does not attempt to create or name a new district, nor to divide the county, nor to fix by any definite boundary the part of the county from which judicial business would be heard and determined at Tonopah.

Although there are other towns in the state, not connected with the outer world by rail or wire, much more distant from the county seat than Tonopah, and for the people in which attendance upon court entails even greater inconvenience, we are not unmindful of the hardships to which a large portion of the citizens of Nye county are subject, and which the act was intended to relieve; and, although we appreciate the purpose for which the statute was passed, questions regarding the expediency and wisdom of the constitution were settled by its adoption, and we must not be led by our sympathies to set aside any of its requirements.

We see no escape from the conclusion that the proceedings of the court during its session away from the county seat would be void, and consequently that it would be vain and useless for the respondents to provide a courtroom and clerk's office elsewhere. It has frequently been held that courts have no power to act away from the place fixed for their terms, and that even consent cannot confer jurisdiction in such cases. (*Ex parte Gardner*, 22 Nev. 284, 39 Pac. 570, citing *State* v. *Roberts*, 8 Nev. 239, and other cases.)

That a constitutional clause designating the county seat for the session of the district court cannot be controlled or avoided by a statute naming another place is elementary.

The application for the writ is denied, and the costs are taxed against the petitioner.