Ex parte JOE OWENS et al.

No. A-8044. Opinion Filed Jan. 24, 1931.
(295 Pac. 415.)

446

Kenneth B. Kienzle, for petitioners.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for respondent.

EDWARDS, J. This is an original proceeding in habeas corpus. Petitioners allege: That they are unlawfully restrained by the sheriff of Pottawatomie county. That on December 19, 1930, petitioners were put on trial in the district court of that county, sitting at Tecumseh, and that the trial of said case continued throughout the day. That the case was submitted to the jury about 5 o'clock p. m., which then retired to consider its verdict and which arrived at a verdict about 8 o'clock p. m. Then, pursuant to instructions of the trial court, a sealed verdict was returned into open court at Tecumseh at 9 o'clock a. m., on December 20. That prior to said time, on December 17, 1930, a county seat election was held in Pottawatomie county, at which the electors voted on the cities of Tecumseh and Shawnee as candidates for the county seat. That at said election Shawnee received more than two-thirds of the votes cast, and the same having been canvassed and the returns certified to the Governor, at 4:17 o'clock p. m., on December 19, 1930, the Governor issued his proclamation declaring Shawnee the county seat. That, by reason of such proceedings and proclamation, the district court at Tecumseh, upon the issuing of said proc-

lamation, ceased to exist, or, if it existed, it lost jurisdiction, for the reason that all proceedings in the trial subsequent to the issuance of the proclamation were at a place other than the county seat of Pottawatomie county and were and are null and void. That thereafter, on December 29, 1930, the district court then sitting at Shawnee sentenced each of the petitioners in accordance with the verdict returned at Tecumseh to a term of five years in the state reformatory at Granite. The respondent admits the allegations of petitioners are substantially correct, and that respondent, the sheriff of Pottawatomie county, is restraining said petitioners by virtue of such judgment and sentence.

The Constitution of this state designates Tecumseh as the county seat of Pottawatomie county. Section 8, art. 17. It also provides for the removal by election of county seats from the places named. Section 6, art. 17. After providing for the calling of an election and in certain cases a second election, it is in part as follows:

"* * * Upon the holding of any such election the board of canvassers shall certify and return said vote to the Governor, who shall thereupon at once declare the result and cause the will of the electors to be carried into effect. * * *"

The section further provides:

"* * * If a majority of all the votes cast in the county at such county seat election shall be in favor of any town, such town shall thereafter be the county seat. * * *"

The latter section further provides, in substance, that, in case of a second election, the county seat shall be subject to change under the same condition except as to the majority of votes required for removal.

Section 25 of article 7, Id., is:

"The terms of the district court shall be held at the county seat of the respective counties."

See, also, sections 3057 and 3072, Comp. St. 1921.

No decision has been called to our attention, nor have we been able to find any case involving a state of facts such as is here presented; that is, a case challenging the jurisdiction of a court where the county seat is declared changed during the course of the trial. There is an abundance of authority that the county seat is the proper place for the transaction of all public business. 15 C. J. 895, 896, and authorities cited. In Belford v. State, 96 Ark. 274, 131 S. W. 953, 954, it was held:

"A court has been defined to be 'a place where justice is judicially administered,' and in order to constitute a court it must meet at the place that is appointed by law and the judicial power of such court can only be exercised at such place."

A district court is defined in Eichoff v. Caldwell, 51 Okla. 217, 151 Pac. 860, L. R. A. 1917E, 359, and a district court was defined by this court in Jones v. Busby, 37 Okla. Cr. 68, 256 Pac. 758, as follows:

"A district court is an arm of the state government, vested with judicial power, consisting of a judge and a clerk and other officers necessary for the transaction of business, assembled to administer justice at a time and place where by law it was authorized to be held."

See, also, in this connection, Wonacott v. Rice, 27 Nev. 102, 73 Pac. 661; Whitener v. Belknap, 89 Tex. 273, 34 S. W. 594; Funk v. Carroll County, 96 Iowa, 158, 64 N. W. 768; Ex parte Lyde, 17 Okla. Cr. 618, 191 Pac. 606.

As stated, none of these cases are directly in point. We assume that no one, in the light of the statutes and Constitution, would assert that a district court could be

commenced and held at some town other than the county seat. If that were done, a different question would be presented and many of the decisions cited by petitioners would be in point.

Decisions defining de facto officers, including judges, de facto political divisions, including counties, are enlightening. 33 C. J. 971, § 101; C., R. I. & P. Ry. Co. v. Carroll, Brough, Robinson & Humphrey, 143 Okla. 128, 287 Pac. 411; 15 C. J. 418, § 47. The rule stated by these cases applies in principle to a de facto county seat, although there are few authorities directly involving county seats. Board of Commissioners, etc., v. Kansas, 19 Okla. 375, 91 Pac. 699, 709, is a case in which the validity of certain funding bonds of Day county, Okla., was at issue. The authority of the district court to sit at a place other than the county seat was challenged. The act of Congress creating several counties, including Day county, established the county seat of the latter at Ioland. It provided that the district court should be held at county seats. The district court for Day county was held at the town of Grand instead of Ioland. The Supreme Court of the territory held, in substance, that Grand was a de facto county seat and the proceedings of the court there valid, saying:

"* * * The third defense presented by the answer of the plaintiff in error is that the county seat of Day county was established by an act of Congress at Ioland, and that the district court of said county could only be legally held at such county seat, and that no court was held at Ioland on July 10, 1900, and no proceedings were there had in the district court of Day county touching the funding of the county's indebtedness. It appears from the record that on July 10, 1900, the session of the district court of Day county was held at Grand, instead of at Ioland, and was being held at Grand at the time this case

450

was heard. * * * That the term of court was held at Grand, instead of at Ioland may therefore be regarded as settled. That Grand was the place where all the public business of Day county was and is transacted was and is a matter of such public notoriety that the court and all persons interested would take notice of, and would not and could not question or ignore it. That Ioland was the originally established county seat is also a fact beyond controversy. * * * There remains, therefore, only the question as to whether or not the determination of the court sitting at Grand, in the county of Day, was a binding and conclusive determination as against parties litigant, appearing in the court and without objecting at the time, and submitting to the court their controversies to be determined by it. If Ioland was the county seat de jure, Grand was the county seat de facto, and this the district court of Day county, being a court of general jurisdiction, woud take judicial notice of, and the validity of the proceedings had could not be questioned in a collateral proceeding. * * *"

The provisions in the Constitution designating the county seats of the various counties and providing for the removal by vote of the people of the county are legislative provisions; that is, they are not embedded in it in the sense of the usual constitutional guaranties. The purpose in designating places as county seats and providing for the removal by vote of the people of the county was to provide orderly government and an orderly method of changing county seats and to insure stability and certainty until the Legislature or the people of the county had acted. Section 4, art. 17, Const.; Frantz v. Autry, 18 Okla. 561, 91 Pac. 193. These provisions are not changed in the usual way by amendment to the Constitution but in a legislative manner by the people of a limited area. In so providing, the Constitutional Convention did not attempt legislation which would meet every condition possible to arise in the changing of a county seat, but only the usual

conditions which might be expected to arise. Hence these provisions do not require a construction so literal, technical, and precise as to result in an absurdity. If the reasoning of petitioners should be sustained and the county seat be in fact removed for all purposes at the instant the Governor affixed his signature, and the court then in session have been dissolved and jurisdiction have been lost, a ridiculous situation would exist. Petitioners would have been in jeopardy in a court of competent jurisdiction, and, if the removal of the county seat dissolved the court, it would not have had power to have ordered the jury and petitioners transported from the late county seat to the new. If a defendant had been tried, a verdict returned, and he were standing to be sentenced, all in a court of competent jurisdiction, and while the judge of the court was pronouncing sentence, and before it was concluded, the Governor should complete his signature to the proclamation, the sentence would have been coram non judice and void. This is not the law. Though we may admit, for the purpose of this case, that instantly upon the signature by the Governor to the proclamation declaring the result of the election the de jure county seat ipso facto was removed from Tecumseh to Shawnee, certainly there continued a de facto county seat at Tecumseh until the conclusion of the trial then in progress. We therefore conclude that the district court properly continued with the trial at Tecumseh until it was completed.

The writ is denied.

DAVENPORT, P. J., and CHAPPELL, J., concur.