Judges — Filing — Another Election Office-Vacancy By filing a notification or declaration of candidacy for an elective office, a Justice of the Peace vacates his judicial office under 26 O.S. 226 [26-226], 26 O.S. 227.1 [26-227.1] and 26 O.S. 162d [26-162d], 26 O.S. 162e [26-162e] 26 O.S. 162f [26-162f] (1968). A judicial officer may file for another elective office while holding a judicial office, but he would automatically vacate his judicial position. The acts of a justice of the peace, after filing of his notification of candidacy for another elective office, are valid acts, to the same extent as if such acts were those of a de jure judge. The Attorney General has had under consideration your letters dated July 12, 1968 requesting opinions of this office. Such requests will be answered in this single opinion, since you are both concerned with substantially the same problems. In your letters and in subsequent telephone conversations relating thereto you ask, in effect, the following questions: 1. By filing a notification or declaration of candidacy for an elective office which is not enumerated in Article VII, Sections 3 and Article VII, Section 7 of the Oklahoma Constitution, does a Justice of the Peace vacate his judicial office? 2. Is a Justice of the Peace prohibited from filing a notification or declaration of candidacy for such other elective office? 3. Of what legal force and effect are proceedings which are had before such Justice of the Peace after he files a notification or declaration of candidacy for such other elective office? Pertinent to your questions is Senate Bill 270 of the 31st Oklahoma Legislature, Second Session, which may now be found in Session Laws, 1968, ch. 287, pp. 618-624. Section 13 thereof provides in relevant part as follows: "A Judge, Justice or candidate for judicial office shall not participate in any campaign for any other elective office, nor shall any person who holds a position as Judge or Justice be a candidate or file a notification or declaration of candidacy for a political office which is not enumerated in Article VII, Sections 3 and Article VII, Section 7 of the Oklahoma Constitution and a violation of this section shall constitute a vacancy in the judicial position and a forfeiture of the emoluments of said judicial position . . . ." Rather than quote Article 7, Sections 3 and 7 of the Oklahoma Constitution which are referred to in Senate Bill 270, let it suffice to point out that said Article 7, which was adopted at an election on July 11, 1967, establishes the Judicial Department of the State of Oklahoma. The judicial offices referred to in Sections 3 and 7 are Justices of the Supreme Court, Judges of the Court of Criminal Appeals, Judges of the Intermediate Appellate Courts which may be created, District Judges, Associate District Judges, and Special Judges. Section 13 of Senate Bill 270 is clear in its mandate that if a "Judge" or "Justice" files a notification or declaration of candidacy for a political office, other than one of those enumerated above from Sections 3 and 7 of Article 7 of the Oklahoma Constitution, he vacates the judicial position he holds at the time he so files. Our problem, in answering your first question, is to determine whether the Legislature intended that Justices of the Peace be embraced within either or both of these terms. We are of the opinion that we may readily dispose of the notion that the term "Justice" was intended to include Justices of the Peace. Throughout Senate Bill 270 this term is used only in connection with Justices of the Supreme Court. We think, however, that the term "Judge" reasonably includes Justices of the Peace. In this connection 48 CJ.S., Judges, Section 2, pp. 946-947, advises as follows: "'Judge' is a term employed to designate a public officer selected to preside and to administer the law in a court of justice. In its most extensive sense, the term is used to include all officers appointed to decide litigated questions while acting in that capacity. In its more limited sense, the term `judge' signifies an officer who is so noted in his commission and who presides in some court. . . ." Justices of the peace in Oklahoma do preside in courts. Article VII, Section 7 of the Oklahoma Constitution abolishes all courts in the State of Oklahoma except those specifically provided for in said Article. Since Justices of the Peace are not so provided for, they are abolished. However, they are abolished at midnight on the day preceding the effective date of said Article, such effective date being, under the provisions of Section 14, January 13, 1969. So then, until said effective date, we must operate in this regard under the provisions of the old Article VII, Section 1 of the Oklahoma Constitution, same providing: "The judicial power of this State shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, District Courts, County Courts, Courts of Justices of the Peace, Municipal Courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law." Since by constitutional edict the office of Justice of the Peace is a court, we think it follows that Justices of the Peace occupying such offices are judges. But there is a further compelling factor that lends support to our conclusion that it was the intention of the Legislature that a Justice of the Peace should also be deemed to have vacated his judicial office if he files for another elective office. It will be noted that the title of Senate Bill 270 provides in that part relevant here as follows: "AN ACT RELATING TO SELECTIONS AND ELECTIONS OF JUDICIAL OFFICERS; . . . PROHIBITING FILING FOR CERTAIN POLITICAL OFFICERS BY JUDICIAL OFFICERS; . . . ." (Emphasis added) The appellate courts of this state have held that the title of an act is a valuable aid in interpreting the body of the act and determining the intent of the Legislature. Meyer v. Doty, Okl., 378 P.2d 309; Taylor v. State, Okl.Cr.,377 P.2d 508. Here the title of the act makes reference to the term "judicial officers." Our research reflects that the courts of the various jurisdictions are divided in their opinions as to whether a Justice of the Peace is a judge, but those jurisdictions that have had occasion to consider the question appear to unanimously agree that such justice is a judicial officer. See House v. Allegheny County (Pa.), 153 Pa. Super. 396, 34 A.2d 48; Prentice v. Bertken (Cal.),50 Cal.App.2d 344, 123 P.2d 96; McGregor v. Balch (Vt.), 14 Vt. 428, 39 Am. Dec. 231; Vogel v. State, (Irid.), 107 Ind. 374, 8 N.E. 164; In re Golding (N.H.),57 N.H. 146, 24 Am. Rep. 66; McVeigh v. Ripley (Conn),77 Conn. 136, 58 A. 701; People ex rel. Benwell v. Foutz (Cal.), 27 Cal.2d 1, 162 P.2d 1; Town of Putnam Valley v. Slutzky (N. Y.), 283 N.Y. 334, 28 N.E.2d 860; Wise v. Withers (U.S.), 7 U.S. (13 Cranch) 331, 2 L.Ed. 457. In consideration of the foregoing reasoning and authorities, the Attorney General concludes, in answer to your first question, that by filing a notification or declaration of candidacy for an elective office which is not enumerated in Article 7, Sections 3 and 7 of the Oklahoma Constitution, a Justice of the Peace vacates his judicial office. We think in answering your second question it is necessary only to examine Section 13 of Senate Bill 270 with the thought in mind that an ambiguous statute is to be given a reasonable and sensible construction, In re Big Cabin Creek Conservancy Dist. No. I of Craig County, Okl.,382 P.2d 756, and that to ascertain the intention of the legislature we must look to each part of the statute being construed, to the evils and mischiefs to be remedied, and to the natural or absurd consequences of any particular interpretation, Thomas v. State, Okl.Cr., 404 P.2d 71. After so examining the statute in question, the Attorney General concludes, in answer to your second question, that the legislature intended that a judicial officer, among these being Justices of the Peace, should not file for another elective office while at the same time holding such judicial office, and that if he did so file, he would automatically vacate his judicial position. In other words, we do not think the legislature intended that such action on the part of a judicial officer would cause him to both lose his judicial position and also be ineligible for the other office for which he files. Inherent in your third and last question is the further question of whether a Justice of the Peace who has filed for another office and has continued to act in his judicial capacity should be deemed to have so acted as a judge de facto. A useful definition of this term is contained in 48 CJ.S., Judges, Section 2, pp. 949-950, as follows: "A judge de jure is one who is exercising the office of a judge as a matter of right. A judge de facto is one acting with color of right and who is regarded as, and has the reputation of, exercising the judicial function he assumes; he differs, on the one hand, from a mere usurper of an office who undertakes to act without any color of right; and, on the other, from an officer de jure who is in all respects legally appointed and qualified to exercise the office. . . ." In the recent case of Rath v. LaFon, Okl.,431 P.2d 312, the Supreme Court of Oklahoma had before it a situation wherein the court was asked to prohibit enforcement of a judgment entered in the Court of Special Sessions of Oklahoma County, on the grounds that such court was not properly constituted. It was the contention of the petitioners that, under the terms of the pertinent statute, such courts could only be established in cities of population of more than 25,000 and less than 100,000 and that clearly Oklahoma City did not fit within this classification. The Supreme Court agreed with this contention but was then faced with the problem of determining the legal effect of the actions of such invalid court. In this connection, note this language of the court in the body of the opinion, beginning at page 315: "The facts in the case before us are much stronger than they were in Hamrick v. George, supra, to support a holding of defacto status. In Hamrick Hamrick v. George, Okl., 378 P.2d 324 the `court' involved was abolished by statute, and the problem as to what effect this had on the subsequent acts of that `court' was answered by according to such acts a presumption of validity as the acts of a de facto court. . . . . "Other decisions in which de facto courts have been recognized and given validity are Layne v. State,23 Okl. Cr. 36, 212 P. 328; Morford v. Territory, 10 Okl. 741,63 P. 958, 54 L.R.A. 513; Oklahoma Transportation Co. v. Lewis, 177 Okl. 106, 58 P.2d 128, and Ex parte Owens,49 Okl.Cr. 445, 295 P. 415. "Passing now to a consideration of the circumstances in the case before us, it was admitted that the challenged court was authorized by a valid enactment of the legislature; the incumbent was duly elected to the office of judge of that court by the electors of Oklahoma County. The defendant thereafter duly qualified for the office and entered upon the performance of his duties. Since that time and until the attack was made here, the judge of that court was accepted and acknowledged by the public generally as the exclusive judge of the Court of Special Sessions of Oklahoma County. As we have seen, many hundreds of cases have been submitted to and decided by the defendant as judge of that court. Under these circumstances we hereby determine that all acts, orders, decrees and judgments of the Honorable John Porter entered and/or performed by him in the capacity and while acting as Judge of the Court of Special Sessions of Oklahoma County which have now become final, as well as those similar acts of said court which may attain final status prior to this decision becoming final, are decreed to be valid acts of said judge of said court to the same extent as if the acts were those of a de jure judge of a de jure court." In Hamrick v. George, Okl.,378 P.2d 324, which is referred to in Rath above, the Supreme Court, in similarly holding a court to be not properly constituted, stated this at page 331: "There is not the slightest doubt but that all public officials involved in the appointment of the Respondent acted in the utmost good faith. It is under these facts that Respondent came into possession of his office and has ever since actively engaged in discharging his duties with the full recognition and approval of all public authorities who were officially concerned with the establishment of the court in question and in making the appointment. Numerous cases have been tried and disposed of since the appointment of Respondent and great hardship and confusion would result if we are compelled to hold that his decisions must be stricken down. . . ." We think such reasoning is valid here. We are of the further belief that it is reasonable to presume that any Justice of the Peace who filed for another office and continued to act in his judicial capacity did so in the belief that the prohibition did not apply to him. Certainly there was some basis for such belief. The very length of this opinion and the numerous authorities relied on to answer the first question indicates that the question is one on which reasonable men might disagree. Therefore, in answer to your third question, it is the opinion of the Attorney General that the acts of a Justice of the Peace, after the filing of his notification or declaration of candidacy for another elective office, are valid acts, to the same extent as if such acts were those of a de jure judge. (Charles L. Owens)