205　　　31
208　　²557

# Keeling, Appellant, *v.* Pittsburg, Virginia & Charleston Railway Company.

*Municipalities—Acts of March 7, 1901, and June 20, 1901—Mayor—Recorder—Ordinance—Signing ordinance.*

After the passage of the Act of March 7, 1901, P. L. 20, which abolished the office of the mayor of Pittsburg, and substituted in its place the office of recorder, the mayor holding over as a de facto mayor had the power to sign ordinances until the recorder actually took his place.

*Equity—Injunction—Balancing of injuries—Public interest—Laches.*

An injunction is of grace and not of right, and a chancellor is not bound to make a decree which will do far more mischief and work far greater injury than the wrong he is asked to redress.

Very slight delay on the part of the complainant in invoking equitable relief, when the work is of magnitude and public interests are prejudiced, will be sufficient to stay the hand of a chancellor.

An ordinance was passed April 8, 1901, authorizing the officers of a city to enter into a contract with a railroad company to elevate its tracks and build a retaining wall over and along the line of a street, to construct its

roadbed *over* part of the street and to construct a bridge and a footway. It also provided for the vacation of certain streets. On April 13, 1901, the contract was executed by the city. On June 22, 1901, a bill in equity was filed by abutting lot owners on the streets affected by the contract, setting forth that their means of communication would be cut off and their property *seriously damaged if the improvements mentioned in the contract were* carried to completion, and that the ordinance was illegal, not having been petitioned for by sufficient lot owners in number and interest. Prior to the filing of the bill, the railroad company had expended in construction of the improvements large sums of money, and had purchased and made contracts to purchase valuable *real estate on the faith of the contract. Held,* that the plaintiffs were guilty of laches and that their bill was properly dismissed.

Argued Nov. 7, 1902. Appeal, No. 181, Oct. T., 1902, by plaintiff, from decree of C. P. No. 1, Allegheny Co., Sept. T., 1901, No. 124, dismissing bill in equity in case of John Keeling et al. v. Pittsburg, Virginia & Charleston Railway Company et al. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER. Affirmed.

Bill in equity for an injunction. Before STOWE, P. J.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*J. M. Shields,* with him *W. S. Thomas,* for appellants.

*M. W. Acheson, Jr.,* with him *Thomas Patterson* and *James R. Sterrett,* for appellees.

OPINION BY MR. JUSTICE DEAN, January 5, 1903:

Jane street in the twenty-fourth ward of the city of Pittsburg had been a public street laid out and opened according to law for more than twenty-one years on April 8, 1901. At that date the city councils passed an ordinance authorizing and directing the proper officers, on behalf of the city, to enter into a contract with the Pittsburg, Virginia & Charleston Railway Company and others, to elevate their tracks and build a retaining wall over and along the line of Jane street from Thirtieth street to and across Thirty-fourth street, and to construct its roadbed over so much of the street as lies north

of the curb between the line of Thirtieth street and the east line of Thirty-fourth street. Also to construct a bridge across the tracks at Ormsby yard and an underground footway to Jane street. And further that the city should vacate six certain streets leading from Jane street to Sarah street. Afterwards on April 13, 1901, the contract was executed by the city and approved by W. J. Diehl, acting as and claiming to be mayor, and by George W. Wilson, director of public works. It was properly attested and countersigned and the seal of the city affixed.

Afterwards A. M. Brown was appointed recorder of the city. On June 17, 1901, he, acting for the city, also executed a contract to the same effect as the one executed by Mayor Diehl. While the work of improvement was being proceeded with, plaintiffs, on June 22, filed this bill to restrain defendants by injunction. It will be noticed, the ordinance authorizing the contract was passed April 8. The bills averred, that plaintiffs were abutting lot owners on the streets affected by the contract, and, that their means of communication would be cut off, and their property seriously damaged if the described improvements if the contract were carried to completion. And further, averred, that the ordinance passed was illegal and had not been petitioned for by sufficient lot owners in number and interest, nor had it been approved by a mayor of the city, for at the time W. J. Diehl signed it claiming to be mayor, there was no such office, it having been abolished by act of March 7, 1901, and the act clothing the recorder with this function of a chief executive was not passed until the Act of June 20, 1901, P. L. 586. The learned judge of the court below says :

" We assume, then, that the ordinance passed April 8, 1901, was valid and legal. The mayor had ceased to exist and the recorder had no power to interfere, and his assent was not required ; and while the approval of Diehl, assuming to act as mayor, did no good, it did no harm. And the ordinance was good without the approval of either."

While his conclusion is correct, we do not entirely concur in the reasons given by the learned judge, for when Mayor Diehl approved the ordinance he was, it seems to us, clearly a de facto officer. After the passage of the act of 1901, which substituted the office of recorder for that of mayor, he continued

in office until the recorder actually took his place.   And that is the substance of our decision in Commonwealth v. Moir, 199 Pa. 534.   One of the manifest purposes of the act was to avoid an interregnum; so at the time Mayor Diehl signed the ordinance, if not the mayor by law, he was the mayor in fact, for he acted under color of title.   We pass no opinion on the other questions because it is not necessary to a decision of the issue before us.   The last point made, fully vindicates the court's decree dismissing the bill.   It will be noticed the ordinance authorizing the contract was passed April 8, 1901.   It was not until June 22, in the same year, that plaintiffs filed this bill; in the interval defendants had expended in construction of the improvements stipulated for in the contract $267,862; purchased real estate to the value of $288,145; had made contracts yet uncompleted for the price of about $100,000; had done mason work along the line of Jane street to the value of $20,000; and all this on the faith of the contract.   In view of all this work and expenditure of money before the eyes of all the complaining lot holders, no steps were taken to assert their alleged rights; the conclusion of the court below is:

"The delay of the interveners, the magnitude of the work done, and the great expense already involved, in the proposed avoiding of grade crossings by defendants' road, when contrasted with any injury which can possibly arise to plaintiffs, are considerations which will prevent a court of equity from granting an injunction, even if it was clear the plaintiffs have a strict legal right."

"An injunction is of grace and not of right, and a chancellor is not bound to make a decree which will do far more mischief and work far greater injury than the wrong he is asked to redress:" Chartiers Block Coal Co. v. Mellon, 152 Pa. 286.

And very slight delay on the part of the complainant in invoking equitable relief, when the work is of magnitude and public interests are prejudiced, will be sufficient to stay the hand of a chancellor: Kerr on Injunctions, page 19.

The decree of the court below is affirmed.