CHICAGO, R. I. & P. RY. CO. v. CARROLL, BROUGH, ROBINSON & HUMPHREY.

No. 19275. Opinion Filed April 1, 1930.

Rehearing Denied May 6, 1930.

W. R. Bleakmore, John Barry, W. L. Farmer, and Robert E. Lee, for plaintiff in error.

A. J. Welch, for defendant in error.

REID, C. This is an action by Carroll, Brough, Robinson & Humphrey, a wholesale grocery corporation, of Clinton, Okla., against the Chicago, Rock Island & Pacific Railway Company and the St. Louis & San Francisco Railway Company, to recover damages to a shipment of candy alleged to have been destroyed by the negligence of the defendants. On a trial to a jury, there was a verdict for plaintiff, and the defendant appealed. In view of the fact that on the trial the Frisco Company passed out of the case by its demurrer to plaintiff's evidence, the two remaining parties will be referred to as they stood in the trial court.

By defendant's first assignment of error, it attacks the jurisdiction of the trial court, the district court of Custer county, to try the case.

In order to understand the question presented, and arrive at a proper conclusion thereon, it is necessary to briefly review the history of this case: It was commenced by plaintiff's filing its petition in the district court of Custer county on May 26, 1922. Before the case was called for trial in that court, the Legislature passed an act approved February 13, 1923, chapter 26, S. L. 1923, which seemed then to have been understood as creating a superior court for that county at Clinton. Thereafter, on motion of plaintiff, and over objection of defendant, the district court entered an order transferring the case to said superior court. Upon a trial there, judgment was had for the plaintiff, and the defendant appealed. The case is found in 114 Okla. 193, 245 Pac. 649, and a rehearing was denied therein on April 6, 1926. The opinion held, in substance, that section 1 of the act, creating the court, was valid, but that section 2 thereof, providing that such superior court should be presided over by the regular district judge for the judicial district, including Custer county, was unconstitutional; and the case, having been tried by such judge, was reversed. After that decision, the district judge refused to act as judge of such superior court, and on April 6, 1926, the Governor, assuming to act under authority of article 6, section 13, of the Constitution appointed W. P. Keen as judge of said superior court. Thereafter, when the appointee was attempting to act as such judge, E. W. Koch, an interested party, applied to this court for a writ of prohibition against him. That case is found as Koch v. Keen, 124 Okla. 270, 255 Pac. 690, decided April 26, 1927. The court stated the substance of its holding in that case in this language:

"Getting back to the issues in the case at bar, we must conclude that the Legislature did not intend for any person to preside over said superior court other than the district judge of that district, and that no office of judge of said court was created by said act, and that there was no office and no vacancy to be filled at the time the Governor attempted to appoint the defendant as judge of said court"

—and granted the writ prohibiting Keen from acting as judge of such superior court. It is evident that, by the two decisions we have discussed, though the court existed, it was without ability to function by reason of having no judge and no provision of law for appointing or electing one. With the foregoing situation, after this case was returned upon its reversal, the district judge, upon motion of plaintiff and upon his own motion, on May 17, 1927, directed the clerk to return and convey all the papers filed in the case to the district court, and refile it with the same number it had when first filed in that court. This order was complied with

by the court clerk of Custer county, who was also acting as the clerk of the superior court.

Thereafter, on October 10, 1927, when this case was reached for trial on the docket of the district court of Custer county, the defendant, by motion filed and by objection to the introduction of evidence by plaintiff, attacked the jurisdiction of the district court on the ground that the case had not been legally transferred there from the superior court, and that therefore the district court had no right to hear the case. The motion and objection were each overruled and the trial proceeded to the result we have stated.

Since this appeal has been lodged here, this court has held adversely to defendant's contention in the case of Isle v. Inman, 136 Okla. 77, 276 Pac. 490, involving substantially the same situation, where we held that the case was properly in the district court of Custer county, and affirmed a judgment of that court. The fact that in that case the action was originally filed in the superior court, while this case was first filed in the district court, does not make the holding in that case inapplicable here. It follows from the foregoing that the district court had jurisdiction to hear this case.

The defendant next complains that the court erred in refusing to give to the jury its requested instruction as follows:

"You are instructed that if Ware was employed by the plaintiff at the time the candy arrived in Clinton, and that if said Ware had on previous occasions directed the place of delivery of freight and thereafter plaintiff received said freight at the place so directed, and that plaintiff did not notify the defendant of the limited authority of said Ware, then and in that event the defendant would have a right to follow the directions given by said Ware and deliver the candy at the place designated by him."

In order to understand the question raised by the refusal to give the requested instruction, it is necessary that the issues made by the evidence be understood.

On May 13, 1921, Runkle Company, at Kenton, O., shipped 6,400 pounds of candy consigned to the plaintiff at Clinton, Okla.; the shipment moving into Clinton over defendant's line of railway. On the second day after the arrival of the shipment, it was by defendant's employees unloaded at its freight depot and placed there on its loading dock or platform. There is evidence in the record that J. A. Ware, whom the plaintiff's evidence designates as its shipping clerk or warehouse manager, requested the employees

of the defendant railway to unload the shipment at the defendant's freight depot. And it is shown without question that after Ware was notified by an employee of defendant that this had been done, he secured a truck driver and instructed him to bring the candy to plaintiff's warehouse. While the truck was en route with a load to plaintiff's warehouse, the candy on the truck, as well as that left on the depot dock, was injured by a heavy rain; and it was for this damage the plaintiff sued. When the truck reached the warehouse of plaintiff with the candy in its damaged condition, C. O. Kemp, the freight traffic manager of plaintiff, directed the driver to return the candy to defendant, which was done. The shipment was sold by defendant for the freight charges, and the excess was tendered plaintiff. The plaintiff contended that Ware had no authority to accept for plaintiff the shipment of more than 6,000 pounds, and the defendant claimed Ware had such authority, or that he, being unquestionably an employee of plaintiff, was acting within the apparent scope of his authority when he accepted the shipment. There was evidence tending to establish this claim of defendant. On the other hand, there was evidence showing that for almost 20 years plaintiff had conducted its wholesale grocery business at Clinton with its business and warehouse located across the street from defendant's depot and freight house; that this warehouse was not on defendant's line of railway, but on the Clinton, Oklahoma & Western Railway, which had a spur along the west side of plaintiff's warehouse. Plaintiff's evidence also disclosed, and this was not controverted by defendant, that for many years it had been the custom of the railways coming into Clinton bringing carload shipments, or as much as 6,000 pounds over their lines for plaintiff, to transfer such shipments to the Clinton, Oklahoma & Western Railway to be by it "spotted" at plaintiff's warehouse, and with no extra charge permitted or paid for that service.

There was evidence introduced by plaintiff through its manager, and other witnesses, to the effect that, in fact, Ware had no authority to accept shipments of more than 6,000 pounds, but that Kemp controlled such shipments, which plaintiff had the right to have "spotted" at its warehouse without extra charge. Kemp testified that, on the day the shipment arrived, he notified one Pickrell, the car clerk of defendant, to have the car containing this shipment spotted by the Clinton Oklahoma & Western Railway at plaintiff's warehouse. And there is evidence

tending to show that defendant knew of the limited authority of Ware to accept shipments for plaintiff, and there is also evidence tending to show that this limitation, with the knowledge of plaintiff, had not at all times been observed.

With this situation in the evidence, the court refused defendant's special charge. But, upon examination of the general charge given, we find (par. 4) the court told the jury that the duty of a carrier to make delivery at a certain place may be shown by a well-established custom, but that such custom must be reasonable and the parties have knowledge; and (par. 5) that if it were a well-established custom for defendant to deliver such shipments as the one in question on the switch track at plaintiff's warehouse, and that defendant was requested to so deliver this shipment, then such delivery would not be complete until so made unless the same had been waived; and then instructed (par. 6) that though they might find that the tariff provided that a shipment of 6,000 pounds or more should be delivered at the unloading dock of the plaintiff, yet the consignee, by its authorized agent, could waive this right, and, in substance, if this was so done, the defendant would not be liable. And the charge contained these further directions:

6. "You are instructed that, even though you find there was a custom to deliver L. C. L. shipments of 6,000 pounds or more at the dock of the consignee upon request of consignee, yet, if you find and believe from the evidence that the consignee, the plaintiff herein, or its authorized agents, requested the placing of the shipment of the candy in question on the carrier's dock, and that pursuant to such request, it was placed on the carrier's dock, in good order, and the plaintiff, by its authorized agent, thereupon, took charge of the same and the damage to such candy occurred after the plaintiff's agent took charge of same, if such you find, then in such case the defendant would not be liable for such damage, but the loss would fall upon the plaintiff, and your verdict should be for the defendant."

6 A. "You are instructed that when one seeks to bind a principal by the acts of one who is admitted to be an agent, the presumption is that the authority of the agent is general, and the burden is upon the principal to show by a preponderance of the evidence that such agent's authority is limited, and that this fact is known to the one dealing with such agent, or could have been known by the exercise of reasonable diligence. In this connection you are also instructed that the limit or the extent of the agent's authority is a question of fact to be determined by the jury from all of the evidence, facts, and circumstances connected with and surrounding the particular transaction in question."

After an examination of all the general instructions given by the court to the jury, we have concluded that the court fairly submitted the law applicable to all the issues raised by the pleadings and the evidence in the case, and substantially included the proposition sought to be covered by the special instruction, and that no error was committed in refusing the instruction.

The judgment of the trial court is affirmed.

BENNETT, TEEHEE, FOSTER, and LEACH, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (2) 14 R. C. L. p. 771; R. C. L. Perm. Supp. p. 3664. See "Trial," 38 Cyc. p. 1711, n. 19.