EXCISE BOARD, WASHITA COUNTY,
v. LOWDEN et al.

No. 30241.   July 8, 1941.

Rehearing Denied Sept. 9, 1941.

*116 P. 2d 700.*

Raymond T. Plumlee, County Atty., of Cordell, for plaintiff in error.

W. R. Bleakmore, W. L. Farmer, John Barry, and Robert E. Lee, all of Oklahoma City, for defendants in error.

Charles E. Bledsoe, of Lawton, amicus curiae.

RILEY, J.   The excise board of Washita county appeals from a decision of the Court of Tax Review under which a protest filed by the defendant in error against a tax levy for county officers' salaries in said county for the fiscal year 1940-41 was sustained.

The amounts provided by the levy were:

County Attorney, Sheriff and County Judge, $2,100.00 each.

County Treasurer, County Clerk, County Assessor and Court Clerk, $1,800.00 each, and County Surveyor, $120.00.

The population of Washita county as shown by the federal decennial census for the year 1930 was 29,435, and according to the preliminary report of the Department of Commerce, for the year 1940, it is 22,264.

In Herndon v. Excise Board of Garfield County et al., 147 Okla. 126, 295 P. 223, this court decided that when such a preliminary report of census was made it was official and a guide for public conduct. We follow that rule. Board of Com'rs of Coal County v. Mathews, 147 Okla. 296, 296 P. 481; Elliott et al. v. State ex rel. Kirkpatrick, 150 Okla. 275, 1 P. 2d 370. Therefore, we conclude that the population of Washita county for the year 1930 was 29,435, and for the year 1940 it was 22,264, and we shall determine the classification into which the county may be placed for county officers' salary purposes as well as the validity of provisions of acts, when necessary, establishing the classifications.

Article 18, chap. 35, S. L. 1937, according to title, is:

"An act fixing the salaries of county officers in counties having a population in excess of 38,000 and not to exceed 65,000, and in counties having a population in excess of 45,000 and an area of 2,200 square miles or more, based upon the decennial Federal Census of 1930; and amending subsections (d) and (e) of sec. 1, of chapter 11 of the Session Laws of 1933, relating to the salaries of county officers and declaring an emergency."

Provision for and the subject of subsection (d) of the act of 1937 is embodied within the title to that act and the text of the act, in this connection, is an amendment providing a lower ceiling in population for the group of counties embraced by the subsection, and the minimum population requirement therein established includes that of Washita county for the year 1930, but the county's population for the year 1940 is not within the subsection or scope of the entire act. The salaries therein provided are those as levied and are the same in amount as provided, by the act of 1933 amended, for Washita county under subsection (d) in event the population for the year 1930 governs; otherwise, and in event the population for the year 1940 governs, subsection (b) of the 1933 act applies as the Court of Tax Review decreed. Thereby a reduction would follow as decreed. But due to additional expressions contained in the title of the 1937 act referring to populations from 38,000 to 45,000, clarity in title is somewhat obscured, causing doubt as to constitutionality of parts of that act. We find it unnecessary to pass upon the constitutionality of the 1937 act, since, as applied to Washita county, the same salaries are provided by the 1933 act hereinafter considered.

The 1933 act, and to which reference is made in the title of the 1937 act, is based on the federal decennial census of 1930. While it is true that section 1 of the 1933 act not only applies to the decennial federal census of 1930, but also attempts to apply that *"as may be shown by any succeeding federal census,"* the attempt is unavailing because the provision italicized is not embraced within the title of the act. Section 57, art. 5, Constitution of Oklahoma specifies that:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title except. . . . Provided, that if any subject be embraced in any act contrary to the provision of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

In State ex rel. Ledbetter, Sheriff, v. Pitts, Co. Treas., 137 Okla. 59, 277 P. 918, this court held:

"The Legislature itself, having selected a restrictive title, is bound by it."

"No doubt," the court said, "if the general statement in the title of the act . . . stating the nature of the subject matter . . . could be considered alone, it would be sufficient to embrace the new legislation in the amendment; but the title was restricted by expressly and

clearly designating the object of the purported amendment."

And so in the act of 1933, supra, the object and purpose of the Legislature as expressed in the title of the act was to fix salaries of county officers alone on population of counties as shown by the particular census of 1930.

Therefore, as in the case then before the court, "Under that title it (the Legislature) was without authority to provide differently . . . in the body of the act" for the application of a succeeding census.

The inconvenience occasioned by deleting portions of an act violative of the Constitution for insufficient or misleading title is incomparable with the evil to follow failure to correctly apply such a constitutional provision.

The Legislature may make the title to an act as restrictive as it pleases and courts cannot enlarge the scope of the title. They are vested with no dispensing power. They properly perform no legislative function. The Constitution has made the title as restricted by the Legislature the index to the Legislature's intent governing operation of provisions of an act. It is no answer to say that the title might have been made more comprehensive. Cooley, Constitutional Limitations (5th Ed.) 179. Deletion of title to extend scope is a legislative but not a court function.

In Langley v. Cox et al., 135 Okla. 291, 275 P. 638, where a title to an act restricted the operation thereof to a certain class, this court held the act could only be sustained according to the restrictions contained in the title notwithstanding the body or text of the act was more comprehensive.

In Cornell v. McAlister et al., 121 Okla. 285, 249 P. 959, we held the text of an act "limited by its title." And in Associated Industries of Oklahoma v. Industrial Welfare Commission, 185 Okla. 177, 90 P. 2d 899, where the act by title prohibited employment of women workers at inadequate wages,

this court stated and followed the rule set forth in 25 R. C. L. 851, sec. 96, that:

". . . The title must be construed with reference to the language used in it alone, and not in the light of what the body of the act contains."

So that it must be concluded, in view of the rule prevailing in this jurisdiction, that the provision for succeeding federal census must be stricken from section 1 of the act of 1933, supra, and the text of the act must be restricted to conform to the title making the census of 1930 the sole guide for the comprehensive, state-wide, uniform schedule of salaries for county officers. Thus the act was not and is not variable as to change of population, and we are now concerned with the decision in Hatfield v. Garnett, 45 Okla. 438, 146 P. 24.

It is urged by the defendant in error that the rule of that decision renders the act of 1937 unconstitutional in that by that rule the act consists of local and special legislation, and it is readily apparent as stressed by the county attorney that under the rule, likewise the act of 1933, supra, must fail.

We might well examine the soundness of the rule of Hatfield v. Garnett. It is that:

"A classification of the counties of the state based upon existing or past conditions (for example, the federal census of 1910) which makes no provision for future changes in the population of the various counties of the state, is local and special legislation, and to be valid, section 32, art. 5, of the Constitution, must be complied with."

It is said that such an act is not prospective; we think it would have been better to say such an act would not be variable to embrace succeeding changes in population. Changes effected by the act have endured for nearly the past decade, under a departmental construction, so for that time the act was prospective.

The act there considered was one to terminate a superior court in Oklahoma

county, but many times since that decision this court has followed the doctrine that legislation having for its object the creation of a court, in a single county, to which all citizens might repair for redress of their grievances, did not fall into the class of special or local legislation. Surely, then, the disestablishment of such a court likewise would be neither special nor local legislation. Leatherock v. Lawter et al., 45 Okla. 718, 147 P. 325; Chicago, R. I. & P. Ry. Co. et al. v. Carroll, Brough, Robinson & Humphrey, 114 Okla. 193, 245 P. 649.

The true rule is based upon the issue of whether the statute operates upon a class capriciously or arbitrarily. It must be reasonable, and in the event the statute does not embrace the whole group naturally falling within its scope at the time of adoption, it must pertain to some peculiarity in subject matter, otherwise it is class legislation and so void. Hatfield v. Garnett, supra; School Dist. No. 85, Kay County, v. School Dist. No. 71, Kay County, 135 Okla. 270, 276 P. 186.

In Chicago, R. I. & P. Ry. Co. et al. v. Carroll, Brough, Robinson & Humphrey, supra, it was held that an act based upon the federal census of 1920 alone was constitutional. This in dealing with the same subject matter as in the Hatfield Case; therefore, the latter case was in fact overruled. Diehl v. Crump, 72 Okla. 108, 179 P. 4.

It is generally held that a law may be general and yet have only one local application. Buchanan v. State, 30 Okla. Cr. 362, 236 P. 903; Chickasha Cotton Oil Co. v. Lamb & Tyner, 28 Okla. 275, 114 P. 333; Diehl v. Crump, supra, 5 A. L. R. 1272; Burks v. Walker, 25 Okla. 353, 109 P. 544; Williams v. State, 19 Okla. Cr. 307, 199 P. 400; Leatherock v. Lawter, supra; City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640; Bishop v. City of Tulsa, 21 Okla. Cr. 457, 209 P. 228, 27 A. L. R. 1008.

The act of 1933 was general in its scope, providing a state-wide uniform schedule of salaries for county officers, and it was reasonable and not arbitrary for the Legislature by enacting that statute to provide a greater salary in more populous counties and a lesser salary in less populous subdivisions of the state. The only reason that can be assigned for the act being special is that it fails to provide adjustments for future changes in population. If that be a rightful subject of legislation, and it is, it may with reason be said that the enacting Legislature contemplated that future bodies of the same nature might attend to adjustments, if and when population drifted, but that the salaries fixed would continue in force until amendment was made. The Legislature might well have deemed that the act would not be abrogated by judicial legislation in the nature of a repeal upon the advent of a succeeding census or by judicial legislation in the nature of an amendment, and particularly long after application of the act under departmental construction. Williams v. Continental Construction Corp., 168 Okla. 510, 34 P. 2d 254; Sheridan Oil Co. et al. v. Superior Court of Creek County et al., 183 Okla. 372, 82 P. 2d 832.

It is true that Sutherland states the general rule quoted in the opinion. We doubt the correct application of the rule. Most of the cases cited supporting the rule had other features rendering the acts special or local and so unconstitutional in part, as, for example, as shown by Edmonds v. Herbrandson, 2 N. D. 270, 50 N. W. 970, 14 L. R. A. 725, considering an act providing for the changing of county seats with a proviso that it would not apply to a county with a courthouse of a certain value. The proviso was stricken. These were cases wherein the courts considered "classifications run mad," and Sutherland in the same section states there are other cases wherein the law providing exceptions based on population, or, for example, where the vote on the last election for president was less than 3,000, was held not to be local or special. City of Indianapolis v. Navin, 151 Ind. 139, 47 N. E. 525, 41 L. R. A. 337, etc., and the author states "a remedial act

is held not to be local or special because applying only to present emergencies and not to like emergencies in the future." Such is the act of 1933, and it is valid. As affecting Washita county, the provisions of the two acts are the same as regards the amount of salary to be allowed county officers and the amounts provided by the tax levy are correct.

Judgment reversed.

OSBORN, BAYLESS, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., CORN, V. C. J., and HURST, J., dissent. GIBSON, J., absent.

WELCH, C. J. (dissenting). I think the judgment of the Court of Tax Review should be affirmed and the 1933 act should be upheld as a valid legislative fixing of salaries throughout the state, based then upon the 1930 Federal Census, but subject to change when the 1940 Federal Census showed sufficient change in the population of any county to change it from one salary bracket to one above or below.

In this character of act I think the title not fatally defective, that the act was fully effective, with uniformity over the state, as applied to the 1930 Census so long as that remained the official census; that the act by specific and valid provision, and to promote and continue uniformity over the state, made the 1940 Federal Census applicable when that later general census should be properly established.

While this conclusion would result in a raise of salaries since 1940 in several counties, and a decrease in salaries in near the same number of counties, all salaries are still uniform throughout the state, based on actual population as shown by Federal Census, and I think this result quite fair and wholesome.

I am authorized to say that CORN, V. C. J., and HURST, J., concur in these views.