Ronald C. HAMRICK, Petitioner,

v.

Woodrow GEORGE, Respondent.

No. 40146.

Supreme Court of Oklahoma.

Nov. 13, 1962.

As Amended Jan. 28, 1963.

Rehearing Denied Jan. 29, 1963.

J. I. Goins, Earl Q. Gray, Ardmore, for petitioner.

Harry L. Bickford, Marvin Shilling, Woodrow George, pro se, Ardmore, for respondent.

James M. Springer, Jr., Hoel & Horton, Henry W. Hoel, Stillwater, Neal A. Sullivan, David Ross, I. D. Ross, William H. Cline, Newkirk, amici curiæ.

PER CURIAM.

This is an original proceeding wherein the petitioner, Ronald C. Hamrick, seeks a

writ of prohibition against the respondent, Woodrow George, preventing the respondent from undertaking further proceedings against him in a certain case originally filed in the District Court of Carter County, and thereafter transferred to "the purported Superior Court" of Carter County. This court is asked to assume original jurisdiction for purposes of considering the petition for the writ.

The question involved is whether or not there presently exists, under appropriate statutes, a Superior Court of Carter County, Oklahoma. It is agreed that respondent was appointed judge of said court by the Governor of Oklahoma, and no question is raised as to his qualifications for the office. It is also tacitly conceded that if said court legally exists, it has jurisdiction of the case originally filed in the District Court of Carter County, so that no notice need be taken of the particular controversy involved therein.

Two sections of the statute are principally involved. The first one was enacted in 1915 and is now codified as 20 O.S.1961 § 161. It provides in pertinent part as follows:

"There is hereby created and established in every county in this State having a population of 33,000 or more and not exceeding 80,000, and having a city therein with a population of 18,000, or more and not exceeding 50,000, * * * as now or hereafter shown by the preceding Federal census, a court of civil and criminal jurisdiction * * to be known as the superior court of such county * * *."

It was under and by virtue of this statute that respondent was appointed Judge of the Superior Court of Carter County in June, 1962. According to the 1960 Federal census, the population of Carter County was 39,044, and the population of the county seat, Ardmore, was 20,184. Both the city and the county were therefore within the population brackets prescribed by the first portion of 20 O.S.1961 § 161.

Petitioner argues, however, that Carter County is not entitled to a superior court because of 20 O.S.1961 § 182, enacted in 1939, which provides as follows:

"The superior court in any county or counties in the State of Oklahoma having a population of less than 52,000, according to the last preceding Decennial Federal Census, is hereby abolished. Provided this Act shall not be construed as abolishing the Superior Court in any County of the State that had a population of 52,000 or more according to the 1930 Decennial Federal Census, in the event any succeeding Federal Decennial Census will show a smaller population than 52,000 in said County."

In addition to the usual briefs of the parties in this case, we have had the benefit of briefs of amici curiae. Since they were independently prepared, some of the arguments are of necessity repeated or related. We will therefore discuss the issues generally, instead of dealing specifically with the propositions raised in any particular brief.

■ We will first consider the meaning of Section 182, keeping in mind the following rule:

"The presumption is that the Legislature expressed its intent in a statute and that it intended what is expressed." State ex rel. Board of Ed., City of Tulsa, v. Morley et al., 168 Okl. 259, 34 P.2d 258.

It is contended that the first sentence of Section 182 was meant to apply only to courts *then in existence* (in 1939) in counties with population of less than 52,000 by the *1930 census only*. In other words, the contention is that the first sentence should be construed as if it read as follows: "The superior court now existing in any county or counties having a population of less than 52,000 according to the 1930 census, is hereby abolished."

■ However, if we give that meaning to the first sentence, the following result is

reached: the first sentence abolishes courts in counties having a poulation of *less than 52,000* according to the 1930 census, and the second sentence (the proviso) excepts from the operation of the section those courts in counties having a population of *52,000 or more* according to the 1930 census. It is obvious that the proviso would, under such construction, be unnecessary and inoperative, since it would be attempting to except something that was not included in the first place. A statute should be construed, if possible, so as to give effect to it as an entirety, and to render every word, phrase and clause operative. Finerty v. First Nat. Bank, 92 Okl. 102, 218 P. 859.

On the other hand, if the phrase "last preceding Decennial Federal Census" in the first sentence is given a prospective effect to include population changes reflected by any succeeding census, the proviso becomes operative and its purpose evident. Under this construction, the first sentence abolishes courts in counties with a smaller population than 52,000 at any given time; and the proviso saves and excepts from the operation of the section, courts in counties that had a population of 52,000 or more in 1930, *regardless of future population changes*.

■ We therefore conclude that the first sentence of Sec. 182 is prospective in meaning and effect, and is sufficiently variable in terms to embrace succeeding population changes, and is not to be restricted in application to the 1930 census only.

In this connection, this court has often held that such phrases as "last federal census" are transient phrases, prospective in nature, and broad enough in scope to embrace population changes reflected by future census figures. See Bonnett v. State ex rel. Newer, 47 Okl. 503, 150 P. 198; In re Cleveland's Claim, 72 Okl. 279, 180 P. 852; Bishop v. City of Tulsa, 21 Okl. Cr. 457, 209 P. 228, 27 A.L.R. 1008; and Board of Comm'rs of Coal County v. Mathews, 147 Okl. 296, 296 P. 481.

We next consider the constitutionality of Section 182.

It is suggested that Sec. 182 constitutes an amendment of Sec. 161 and is unconstitutional because the legislature failed, as required by Sec. 57, Art. 5, Oklahoma Constitution, to re-enact and publish at length the section as amended.

This section of our constitution has consistently been liberally interpreted by this court. For an exhaustive discussion of its meaning, see the early case of City of Pond Creek v. Haskell, 21 Okl. 711, 97 P. 338, at page 352 of the Pacific Reporter. See also In re Lee, 64 Okl. 310, 168 P. 53, L.R.A. 1918B, 144.

In the latter case, the court considered two conflicting statutes enacted in 1913 and 1915. The 1913 statute provided, among other things, for advance fees of $15.00 upon the filing of a case in the Supreme Court. Without purporting to amend the 1913 statute, and without specifically referring to it, the 1915 statute provided for an advance fee of $40.00 "instead of $15.00 as now provided". In discussing the meaning and purpose of Sec. 57, Art. 5 of our Constitution, the court quoted the following language from People ex rel. Drake v. Mahaney, 13 Mich. 481, in which the Michigan court construed a similar provision:

"* * * The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect * * *. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to, but not re-published, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation."

In the Lee case we concluded that the 1915 statute fixing an advance fee of

$40.00 was not in violation of the constitutional provision, and said:

"* * * We hardly think that the section is misleading, or that it is necessary for one of ordinary intelligence to refer to any other act or statute to ascertain the legislative intent to * * require an advance payment to the clerk of $40 in each case filed in the Supreme Court. While the purpose could have been as well affected by an act strictly amendatory in form, re-enacting all of sections 7 and 8, with the desired changes, yet if the Legislature chose to employ an original act to accomplish the desired end, the court cannot interfere with their discretion in the matter.

\* \* \* \* \* \*

"While this question is not free from difficulty, and while we do not desire to encourage other legislation in this form, yet, in view of the fact that the legislative intent can be gathered from the act itself, and it does not tend to mislead or deceive, we cannot say that the mischief which the Constitution prohibits has been worked in this instance."

■ We think the same language could be applied in the instant case. Section 182 purports to deal only with the abolition of superior courts in counties with less than 52,000 people, and it is not necessary to refer to any other act or statute to ascertain its meaning. Although it amends Section 161, at least by implication, by changing the minimum population requirement from 33,-000 to 52,000 (just as the 1915 act considered in In re Lee, supra, changed the advance fee in the Supreme Court from $15.00 to $40.00) it is not the kind of amendatory act which is prohibited by Sec. 57, Art. 5 of the Constitution.

· ■ Even if Sec. 182 were in violation of the procedural requirements of our constitution concerning the enactment of amendatory statutes, it would still be held to be in full force and effect, because it was included in both the 1941 and 1951 codifications of the laws of Oklahoma. See

Atchley v. Board of Barber Examiners, 208 Okl. 453, 257 P.2d 302, wherein this court quoted with approval the following language from Ex parte Haley, 202 Okl. 101, 210 P.2d 653, 12 A.L.R.2d 416:

"* * * The general rule is that where by legislative enactment a code commission is created and such commission is authorized and empowered to compile and codify statutes of the state then in force, *and the legislature thereafter adopts the code* so compiled and prepared by the commission *as the laws of the state*, such code and all laws therein contained thereafter become the law of the state * * *." (Emphasis supplied.)

See also Atlas Life Ins. Co. v. Rose, 196 Okl. 592, 166 P.2d 1011; Bandy v. R. H. Fulton & Co., Okl., 312 P.2d 875.

We are aware of State ex rel. Williamson v. Empire Oil Corporation, Okl., 353 P.2d 130, wherein we held that inclusion in the codification of a statute which had been repealed by substitution did not have the effect of validating such statute. However, we were there dealing with a situation where the legislature had adopted a complete and comprehensive new law (the Business Corporation Act) which was intended not only as a substitute for the earlier act, but also to cover the whole subject matter then under consideration. Such is not the case here; Section 182 does not purport to cover the whole subject matter of what counties are entitled to superior courts, but is restricted to the subject of the abolition of such courts in counties of a certain class.

It may be conceded that the legislative adoption of a code including a law unconstitutional in its substantive provisions, would not have the effect of making the law constitutional. However, we are here concerned only with procedural requirements affecting the manner of adoption of the law, not the law itself.

■ Respondent invites our attention to the fact that *both* sections 161 and 182 were included in the 1941 and 1951 codifications, and that they are in direct conflict insofar

as the minimum population requirement is concerned. In such case, the following rule from Ex parte Burns, 88 Okl.Cr. 270, 202 P.2d 433, is applicable:

"Where two conflicting and inconsistent statutes are carried into the codified law, the one last passed, which is the later declaration of the legislative will, should prevail."

To the same effect, see Hines v. Harmon, 178 Okl. 1, 61 P.2d 641.

Therefore, insofar as they are in conflict. Section 182, passed in 1939, will prevail over Section 161, passed in 1915.

It is next suggested that Section 182 is unconstitutional in its entirety because (1) it is a special, as opposed to a general law, and was not enacted after published notice as required by Sec. 32, Art. 5, Oklahoma Constitution; and (2) the proviso thereof is based upon an unreasonable, arbitrary and capricious classification, in that the right of any county to have a superior court is dependent upon a past or static condition (the 1930 census) and not upon its present population.

This argument is supported by the early case of Hatfield v. Garnett, 45 Okl. 438, 146 P. 24, which treated laws creating or abolishing courts as special, as opposed to general, laws and, further held that a statutory classification based upon existing or past conditions (the federal census of 1910) which made no provision for future population changes, was unconstitutional.

However, in Leatherock v. Lawter, 45 Okl. 715, 720, 147 P. 324, the court distinguished the Hatfield case, and adopted the position that laws creating or abolishing courts are general, and not special, laws. In Hudgins v. Foster, 131 Okl. 90, 267 P. 645, the court discussed both the Hatfield and Leatherock cases, and said:

"* * * Therefore, it may be said that this court is now firmly fixed to the doctrine that the creation of such courts or the abolition thereof finds its sanction in section 1, art. 7, of the Constitution, and is therefore not a special or local law."

This position was reaffirmed as recently as 1959 in Missouri-Kansas-Texas Railway Co. v. Coryell, Okl., 346 P.2d 935. In that case we held that a statute creating a superior court in a single, named, county, was a law general in nature and uniform in operation, and was constitutional.

Also, in Excise Board of Washita County v. Lowden, 189 Okl. 286, 116 P.2d 700, the rule from the Hatfield case that a statutory classification based upon an existing or past federal census was unconstitutional, was overruled. See also Chicago, R. I. & P. R. Co. v. Carroll et al., 114 Okl. 193, 245 P. 649.

We therefore hold that Section 182 is a general law and not subject to the requirements of Sec. 32, Art. 5, of our Constitution; and that the fact that the proviso thereof is based upon the 1930 census only does not render it constitutionally defective.

We have previously noted that the present population of Carter County is 39,044. Since 20 O.S.1961 § 182 is prospective in effect, the first sentence thereof abolishes superior courts in counties of that size. Carter County did not have a superior court, and a population of 52,000 or more, in 1930, and the proviso of Sec. 182 is therefore not applicable. It follows that Carter County is not now entitled to a superior court.

## SUPPLEMENTAL OPINION

Since we have determined that Carter County is not entitled to a Superior Court under existing laws, considerable confusion will be created in the minds of litigants concerning the status of cases which have been heretofore disposed of, and in which orders have heretofore been made, unless attention is given to the problem.

It is urged that if Carter County is not entitled to a Superior Court, under the facts in the case at bar, Respondent's official status is no less than that of a de facto judge, and as such, his official acts are as valid and binding as those of a de jure judge. Sheldon v. Green, 182 Okl. 208, 77 P.2d 114 and 48 C.J.S. Judges § 2, p. 950.

In Chicago, R. I. & P. Ry. Co. et al. v. Carroll et al., 114 Okl. 193, 245 P. 649, the validity of the act creating a Superior Court in Custer County and providing that the judge of the District Court should also act as ex officio judge of the Superior Court was challenged. This court upheld that portion of the act which created the court, thus holding in effect that the Superior Court of Custer County was a de jure court, but we held unconstitutional that portion of the act which provided that said court should be presided over by the regular district judge within the judicial district. In holding valid the acts of the district judge as "ex officio" judge of the Superior Court, we said:

"It also appears that several hundred cases of all kinds, including those involving land titles, divorces, etc., have been disposed of by said superior court since its creation. To strike down, at this late date, the rule announced in Leatherock v. Lawter, supra, [45 Okl. 720, 147 P. 324] and in Diehl v. Crump, supra, [72 Okl. 108, 179 P. 4, 5 A.L.R. 1272] and hold the act creating said court unconstitutional would work a great hardship on litigants who have relied thereon, and create endless confusion. Whether that decision was right or not, public policy and sound legal principle demand that we now adhere to it."

Motion for rehearing in Chicago, R. I. & P. Ry. Co. v. Carroll, supra, was denied on April 6, 1926, and thereafter on the same day the Governor appointed a "superior court judge" as judge of said court. Immediately thereafter an original proceeding was brought in this court (Koch v. Keen, 124 Okl. 270, 255 P. 690) to prohibit the "superior court judge" from functioning as judge of said court. We granted the writ for the reason that the act creating the court did not authorize the appointment of a "superior court judge" but required the district judge to serve "ex officio" as judge of said court. Thus, in that case, the Legislature had created the court but had not authorized it to be filled by a superior court judge. In that case it does not appear that the newly appointed judge had tried any cases, or made any orders, except in the one case which provoked the filing of the proceeding in this court. Furthermore, it does not appear from the Koch case that the Governor had sought or obtained an official opinion from the Attorney General. No questions of public policy affecting the rights of litigants in cases previously tried by the judge of the Superior Court were involved in that case.

We are mindful of the rule as expressed in the third paragraph of the syllabus in the Koch case, that "There can be no de facto officer where there is no office to fill." We are also mindful that the rule has not been universally accepted where great hardship to litigants and endless confusion would result by a strict adherence to the rule. See 99 A.L.R. 308; Adams v. Lindell, 5 Mo.App. 197, affirmed in 72 Mo. 198; Keeling v. Pittsburg, V. & C. R. Co., 205 Pa. 31, 54 A. 485; Lively v. Board of Education, 115 W. Va. 314, 175 S.E. 784; Arnold v. Hilts, 61 Colo. 8, 155 P. 316; In re Santillanes, 47 N.M. 140, 138 P.2d 503.

In the instant case the Governor sought and obtained an official opinion from the Attorney General of this state. The Attorney General is the "Chief Law Officer of the State." 74 O.S.1961 § 18. It is the duty of the Attorney General to give his opinion in writing upon all questions of law submitted to him by the Governor of this state upon matters in which the Governor is officially interested. 74 O.S.1961 § 18b(e). In the fourth paragraph of the syllabus in Rasure v. Sparks, 75 Okl. 181, 183 P. 495, we held:

"It being the duty of the Attorney General, under section 8059, Rev. Laws, to give his opinion in writing, when requested, 'upon all questions of law submitted to him by * * * any state official, commission or department,' such advice, when obtained by the state superintendent of public instruction for and at the instance of a

county superintendent, respecting the discharge of the latter's official duties, should be followed."

There is not the slightest doubt but that all public officials involved in the appointment of the Respondent acted in the utmost good faith. It is under these facts that Respondent came into possession of his office and has ever since actively engaged in discharging his duties with the full recognition and approval of all public authorities who were officially concerned with the establishment of the court in question and in making the appointment. Numerous cases have been tried and disposed of since the appointment of Respondent and great hardship and confusion would result if we are compelled to hold that his decisions must be stricken down. Under the circumstances of this case it can hardly be disputed that the Governor had color of authority under the Attorney General's opinion to fill a vacancy existing in a judicial office.

██ We are of the view that where the Governor seeks and obtains an official opinion from the Attorney General of this State that a judicial office does in fact exist, and in reliance upon said opinion fills a vacancy in the supposed office, and numerous cases are tried in such court before any decision is reached by this court holding that such court does not exist, that it would be contrary to the public policy of this state to strike down the decisions and orders theretofore entered by the court.

The writ of prohibition is granted and will become effective when the judgment rendered by this opinion becomes final, and the Respondent Judge will be prohibited from proceeding further in Case No. D.-2503, Caroline Biggs Hamrick vs. Ronald C. Hamrick, on assignment from the District Court of Carter County, and in all other cases then pending in said court. All of Respondent's official acts performed while discharging his duties as judge of said court and until this decision becomes final shall be deemed and treated as valid in like manner as those of a de jure judge.

When this decision becomes final, all civil and criminal cases, both adjudicated and pending, which were filed in the Superior Court of Carter County, and all books, records, dockets and files, shall be forthwith transferred by the Court Clerk to the District Court and/or other courts of said county which had original or concurrent jurisdiction in such cases, all in conformity with the provisions and authority contained in 19 O.S.1961 §§ 221 and 221.1, and 20 O.S. 1961 §§ 643 and 644, and other applicable statutory provisions, and it is so ordered. In this connection see Isle v. Inman, 136 Okl. 77, 276 P. 490; Chicago, R. I. & P. Ry. Co. v. Carroll et al., 143 Okl. 128, 287 P. 411, supra; Bingenheimer v. Holcomb & Hoke Mfg. Co., 144 Okl. 275, 291 P. 66.

## ON REHEARING

### PER CURIAM.

The sole contention on rehearing raises, for the first time, the constitutionality of the *substantive provisions* embodied in 20 O.S. 1961 § 182. As construed in our opinion herein, the first sentence of that enactment effects an abolition of superior courts in counties having a population of less than 52,000 "at any given time", while the proviso excepts from the operation of the section superior courts in counties which did have a population of 52,000 (or more) in 1930, regardless of any future losses in population.

According to our construction of Sec. 182, respondent now urges, its abolition provisions are prospective only "as to some counties" but not so as to those which fall within the class excepted by the proviso. This feature alone, the argument follows, operates to create an unreasonable classification and taints the entire enactment with the "imprint" of discrimination between counties without any justifiable basis or reason therefor. The rule invoked by respondent in support of his contention is stated in Hudgins et al. v. Foster et al., 131 Okl. 90, 267 P. 645, where we held:

"Where an act of the Legislature excepts from the operation of the general

laws of this state one or more counties without any fixed basis for such dis-crimination, and no good reason is shown why all should not be subject to the same rule, it is invalid under section 59, article 5, of the state Constitution which provides (that) laws of a general nature shall have uniform operation throughout the state."

Respondent concedes that our former decisions unequivocally uphold as "general nature and uniform in its operation" a legislative act creating or abolishing a superior court in a single county of the state. See, Missouri-Kansas-Texas Railroad Company v. Coryell, Okl., 346 P.2d 935; Leatherock v. Lawter et al., 45 Okl. 715, 147 P. 324. The argument urged upon us is that this judicial sanction should not be extended so as to uphold statutes purportedly general in form when in fact based on a "patently arbitrary and capricious" classification of counties.

The proposition here advanced appears to have been resolved contrary to respondent's contention in Chicago, R. I. & P. Ry. Co. et al. v. Carroll, Brough, Robinson & Humphrey, 114 Okl. 193, 245 P. 649. In the cited case this court upheld the establishment of a superior court by a legislative act which, although appearing to be general in form, rested in fact upon an arbitrary classification of county population. Our opinion therein, which was based largely on the previous decisions in Leatherock v. Lawter et al., supra, and in Diehl v. Crump, 72 Okl. 108, 179 P. 4, 5 A.L.R. 1272, states (at p. 651 of 245 P.) :

" * * * The Legislature, in passing said act, no doubt, was familiar with the *decision of this court holding that the creation of a court was general legislation, and it had a right to rely upon the rule therein announced.*

"*It is true, of course, that the Legislature placed the provisions relative to population in said act, but this was done, no doubt, through abundance of caution, to show that a general act was intended.*" (Emphasis ours).

Our holding in the Chicago case, supra, was followed and reiterated in Hudgins et al. v. Foster et al., supra, where we drew a distinction between legislation creating and abolishing superior courts and an act which dealt with abolition of township officers in some counties but excepted others without any basis or justification. See also, Excise Board of Washita County v. Lowden, 189 Okl. 286, 116 P.2d 700, 703.

All these pronouncements rest upon the theory that statutes having for their object the creation or abolition of superior courts, "to which all citizens might repair for redress of their grievances," affect the people as a whole rather than any particular county territory in which such a court may be required to hold its sessions. The authority to create or abolish these tribunals finds its sanction in Sec. 1, Art. 7 of the Constitution which confers upon the Legislature the power to establish courts inferior to the Supreme Court. See Missouri-Kansas-Texas Railroad Company v. Coryell, supra, and cases cited therein.

In view of these authorities, we are constrained to hold that territorial distribution of the superior courts over the counties of the state is not within the inhibition of the rule invoked here by respondent, and the Legislature is entirely free from constitutional restraint to establish or abolish such tribunals without any rational relation to the population of each county affected by its act.

An "equal" or uniform distribution of statutory courts among the counties of the state is not required by the Constitution. Their creation or abolition need not be related to population classification. A statutory court, once established by an act based on city population classification, will not be terminated when that city has acquired a population in excess of the limit fixed in such act, in the absence of a specific indication that such court should cease to exist when the limit is exceeded. Ex parte Haley, 202 Okl. 101, 210 P.2d 653, 658, 12 A.L.R.2d 416.

We therefore hold that the substantive provisions of 20 O.S.1961 § 182, are not violative of the State Constitution. We further hold that Section 59, Article 5, is not applicable to superior courts.